Argued March 8, affirmed March 27, 1928.

# W. N. DANIELS *v.* CITY OF PORTLAND ET AL.

### (265 Pac. 790.)

**Constitutional Law—Eminent Domain—Ordinance Within Lawful Exercise of City's Police Power is not Unconstitutional (Const., Art. I, §§ 1, 18, 21; Const. U. S. Amend. 14).**

1. Ordinance which is within lawful exercise of police power of municipality is not contrary to Constitution, Article I, Sections 1, 18, 21, or Constitution of the United States, Amendment 14, since legitimate scope of police power ends where constitutional inhibitions begin.

**Constitutional Law—Eminent Domain—Municipal Regulation Prescribing Requirements as to Windows for Rooms Occupied for Living Purposes Held not Unconstitutional (Const., Art. I, §§ 1, 18, 21; Const. U. S. Amend. 14).**

2. Housing Code of City of Portland, requiring that rooms occupied for living purposes should have windows of certain size opening over space open to sky, *held* not violating Constitution, Article I, Sections 1, 18, 21, or Constitution of the United States, Amendment 14.

**Health—City Under Police Power may Enact Reasonable Regulations for Hotels, Tenements and Lodging-houses.**

3. Regulation by city of hotels, tenements and lodging-houses under police power is proper subject of legislative action, but degree of regulation should be reasonable and not arbitrary.

**Municipal Corporations—Though Reasonableness of Ordinance Regulating Hotels, Tenements and Lodging-houses is Primarily for Legislative Judgment, Judiciary will Declare It Invalid if Manifestly Unreasonable.**

4. When city's legislative enactment regulating hotels, tenements and lodging-houses is manifestly unreasonable and arbitrary, judiciary will declare it invalid, notwithstanding that reasonableness of given ordinance is primarily question of legislative judgment, and that in doubtful case judicial authority must defer to legislative wisdom.

---

1. Police power defined, see note in 53 **Am. St. Rep.** 572. See, also, 6 **R. C. L.** 185.

3. Constitutionality of statutory regulation as to safety and sanitary conditions of tenements, lodging, etc., homes, see note in 17 **L. R. A.** (**N. S.**) 486. See, also, 4 **R. C. L.** 400. Building regulations tending to promote public health, safety or morals, see note in 93 **Am. St. Rep.** 409. See, also, 4 **R. C. L.** 395; 6 **R. C. L.** 213.

4. See 6 **R. C. L.** 106, 244.

Injunction—Plaintiff Seeking to Enjoin Enforcement of Ordinance as Unreasonable Regulation of Lodging-houses must Show Invalidity of Ordinance Assailed.

5.  In suit against city to enjoin as unreasonable enforcement of ordinance regulating hotels, tenements and lodging-houses, plaintiff has burden of showing invalidity of ordinance assailed.

Health—Ordinance Requiring Rooms in Dwellings Already Erected to be Provided With Windows Complying With Such Ordinance Held not Retrospective.

6.  Ordinance providing that rooms in dwellings erected prior to its passage should thereafter be provided with windows meeting requirements of ordinance *held* not retrospective.

Health—City's Building Permit for Construction of Hotel Does not Affect City's Right to Adopt and Apply to Such Hotel Regulative Measures for Public Health.

7.  Building permit granted by City of Portland for construction of certain hotel does not affect right of city exercising police power to adopt and apply to such hotel regulative measures looking to public health.

---

Constitutional Law, 12 C. J., p. 891, n. 75, p. 908, n. 26, p. 917, n. 98, p. 919, n. 37.

Injunctions, 32 C. J., p. 347, n. 20.

Municipal Corporations, 43 C. J., p. 328, n. 37.

From Multnomah: GEORGE ROSSMAN, Judge.

Department 2.

This is a suit for a restraining order enjoining the City of Portland and its officers from enforcing that part of Ordinance No. 34945 of the Housing Code of the City of Portland, reading:

"Sec. 123. No room in a dwelling erected prior to the passage of this Code shall hereafter be occupied for living purposes unless it shall have a window of an area of not less than eight square feet opening directly upon the street, or upon a rear yard not less than ten feet deep, or above the roof of an adjoining building, or upon a court or side yard not less than

---

5.  Presumption and burden of proof as to validity of ordinance, see note in Ann. Cas. 1916B, 502.  See, also, 6 R. C. L. 97, 102.

6.  Application of building regulations to buildings previously completed, see note in 93 Am. St. Rep. 410.  See, also, 6 R. C. L. 305.

twenty-five feet square in area, open to the sky without roof or skylight, unless such room is located on the top floor and is adequately lighted and ventilated by a skylight opening directly to the outer air."

The plaintiff herein is the legal owner in fee simple of Lots 1 and 2, Block 120, City of Portland, Multnomah County, Oregon. Upon this property is situate the Harrison Hotel, around which this controversy revolves. The hotel was constructed in 1907, under a permit granted by the City of Portland pursuant to the provisions of Ordinance No. 14109, the Building Code of that city then in force. The ordinance assailed came into existence on January 22, 1919. It contains "sanitary, health and safety regulations covering the construction, alteration, maintenance, occupancy, use, equipment, and removal of buildings which are occupied in whole or in part for a dwelling, flat, apartment, lodging house, or other similar purpose."

There is no controversy in relation to the physical condition of the hotel in question. The building is situate in a factory district of the city. It covers a quarter block, and is five stories in height. The lower floor is used, in part, as a lobby, and the remainder is rented for restaurant and other business purposes. The four upper stories are used as a hotel. The situation with respect to the hotel is described in the following language:

"The hotel part of the structure has a row of rooms in each story around the outer wall. Within that is a corridor or hallway on each floor, running entirely around the building, with doors opening to all the rooms. The east hallway has a window on the north end and a door opening to a fire escape on the south end. These are the only openings from the hallway directly to the outer air.

"Within the hallway, with doors opening therefrom, and with windows opening upon the light well or court in controversy, are 46 rooms designed as sleeping rooms, 10 of which have been converted into housekeeping rooms by the appellant by the installation of open, unvented gas plates, and the occupants cook, live and sleep in the same room. The light well or court is 26 feet 4 inches by 31 feet 8 inches in size, and is covered at the top with a sloping canopy constructed partly of translucent glass and partly of wood or other supporting material. The only opening in this canopy is a small ventilator."

The plaintiff alleged that the chief health inspector of the City of Portland, under threat of immediate arrest, illegally ordered and directed the plaintiff to remove or cause to be removed the skylight over the opening or court in the hotel building, or immediately to cease using or renting for sleeping purposes rooms having windows opening on the court thereof.

The trial resulted in a decree dismissing plaintiff's complaint, from which decree this appeal is taken.

AFFIRMED.

For appellant there was a brief over the names of *Mr. L. A. Liljeqvist* and *Mr. Barge E. Leonard,* with an oral argument by *Mr. Liljeqvist.*

For respondents there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, and *Mr. R. A. Imlay,* Deputy City Attorney, with an oral argument by *Mr. Imlay.*

*Mr. Henry M. Esterly,* on brief, *Amicus Curiae.*

BROWN, J.—1, 2. The plaintiff contends that that part of the ordinance known as the Housing Code of the City of Portland set out in our statement is

unconstitutional, in that it is a violation of the Four-
teenth Amendment of the Constitution of the United
States, and of Sections 1, 18 and 21, Article I, of the
Oregon Constitution, and that the ordinance is arbi-
trary and not a proper exercise of the police power
vested in the City of Portland.

If the ordinance is within the lawful exercise of
the police power of the defendant municipality, it is
not contrary to either the state or the federal Con-
stitution. This is so because the legitimate scope of
the police power ends where constitutional inhibi-
tions begin: *Rehmann* v. *City of Des Moines,* 200
Iowa, 286 (204 N. W. 267, 40 A. L. R. 922).

The police power is impossible of exact definition.
In the case of *Tanner* v. *Little,* 240 U. S. 369 (60
L. Ed. 691, 36 Sup. Ct. Rep. 379, see, also, Rose's
U. S. Notes), Mr. Justice McKENNA, referring to that
power, says:

"We will not here define it or its limitations. As
was said by Mr. Justice BROWN in *Camfield* v. *United
States,* 167 U. S. 518, 524 (42 L. Ed. 260, 17 Sup. Ct.
Rep. 864, see, also, Rose's U. S. Notes), citing *Ride-
out* v. *Knox,* 148 Mass. 368 (19 N. E. 390, 12 Am. St.
Rep. 560, 2 L. R. A. 81): 'The police power is not
subject to any definite limitations, but is coextensive
with the necessities of the case and the safeguarding
of the public interests.' "

In the case of *Noble State Bank* v. *Haskell,* 219
U. S. 104 (55 L. Ed. 112, 31 Sup. Ct. Rep. 186, Ann.
Cas. 1912A, 487, 32 L. R. A. (N. S.) 1062), Mr.
Justice HOLMES, in rendering the opinion of the court,
speaks of the police power in the following language:

"It may be said in a general way that the police
power extends to all the great public needs. *Cam-
field* v. *United States,* 167 U. S. 518 (42 L. Ed. 260,
17 Sup. Ct. Rep. 864). It may be put forth in aid of

what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.''

In *Commonwealth* v. *Alger* (1851), 7 Cush. (Mass.) 53, Mr. Chief Justice SHAW of the Massachusetts court gave a definition of the term ''police power'' that is frequently cited and quoted with approval by the courts. Among other things, the justice wrote:

''All property in this commonwealth is * * held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and such reasonable restraints, and regulations established by law as the legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient. This is very different from the right of eminent domain—the right of a government to take and appropriate private property whenever the public exigency requires it, which can be done only on condition of providing reasonable compensation therefor. The power we allude to is rather the police power; the power vested in the legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the Constitution as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and the sources of this power than to mark its boundaries or prescribe the limits to its exercise.''

In Public Health Law, Tobey, at page 223, appears the following interesting and concise statement concerning the fundamental legal principles applicable

to public health procedure, and its relation to the police power of the municipality:

"The administration of public health activities in the United States is primarily vested in the individual states. This is so because the protection of health is a part of the police power, that inherent power of a government to enact laws, within constitutional limitations, to promote the health, safety, morals, order, comfort, and general welfare of the people. The police power may be employed for the benefit of the people as a whole, to restrain the use of the liberty and the property of individuals, for it is founded on the maxim, 'the greatest good to the greatest number.' The states possessed this police power before the federal Constitution was established in 1789, and they did not relinquish the right at that time, nor have they done so since. They cannot, in fact, divest themselves of the police power."

The police power is a law of necessity, and its extent "must from time to time conform to the growth of our social, industrial and commercial life. You cannot put a strait-jacket on justice any more than you can put a strait-jacket on business." 2 Cooley's Constitutional Limitations (8 ed.), p. 1227. For further discussion on this subject, see Chapter 16 of this work.

3–5. Plaintiff asserts, in effect, that the value of his investment will be lessened if he is required to make the improvements necessary to conform to the ordinance in question. In the light of modern legislation, the right of law-making bodies, in the exercise of the police power, to regulate, or, in proper cases, to prohibit, the conduct or carrying on of a given business, is not limited by the fact that the value of the investment in the business prior to the legislation outlawing such business will be greatly diminished. See *Mugler*

v. *Kansas*, 123 U. S. 623 (31 L. Ed. 205, 8 Sup. Ct. Rep. 273). The regulation of hotels, tenements and lodging-houses under the police power vested in a municipality is a proper subject for legislative action; but the degree of regulation should be reasonable, and not arbitrary. The reasonableness of a given ordinance is pre-eminently and primarily a question for legislative judgment; and, in a doubtful case, the judicial authority must defer to the legislative wisdom. But, when the legislative enactment is manifestly unreasonable and arbitrary, and offends against the prohibitions within the federal or state Constitution, it becomes the duty of the judiciary to declare such act invalid. However, in a case of this character, the law places upon the plaintiff the burden of showing the invalidity of the ordinance assailed.

The record herein tends to show an unhealthful condition in the matter of ventilation of the hotel maintained by plaintiff. This being true, upon complaint to the proper authorities it became the plaintiff's duty under the law to abate that condition in some feasible and efficient manner. This he refused to do, and, instead, attacked the ordinance as unconstitutional.

6, 7. Plaintiff's counsel asserts that the ordinance in question is retrospective. We cannot follow the plaintiff. The act in question cannot be properly classed as retrospective. It affects no act or fact or right accruing before its enactment. It neither destroys nor impairs any vested right acquired under existing law. A careful reading of the ordinance discloses that it is solely prospective. The building permit granted by the City of Portland for the construction of the Harrison Hotel does not affect the right of the police power of the City of Portland to adopt and

apply to it regulative measures looking to the public health: *State* v. *Bunting,* 71 Or. 259 (139 Pac. 731, Ann. Cas. 1916C, 1003, L. R. A. 1917C, 1162); *Portland* v. *Public Service Com.,* 89 Or. 325 (173 Pac. 1178); *Slovanian L. & S. Assn.* v. *City of Portland,* 111 Or. 335 (224 Pac. 1098). For cases from other jurisdictions that are much in point, see *Seattle* v. *Hinckley,* 40 Wash. 468 (82 Pac. 747, 2 L. R. A. (N. S.) 398); *Commonwealth* v. *Roberts,* 155 Mass. 281 (29 N. E. 522, 16 L. R. A. (N. S.) 400); *Tenement House Dept.* v. *Moeschen,* 179 N. Y. 325 (72 N. E. 231, 103 Am. St. Rep. 910, 1 Ann. Cas. 439, 70 L. R. A. 704).

Our attention has been called to the fact that W. A. EKWALL, Judge of the Municipal Court of the City of Portland, has been made a party defendant hereto. That a court of equity has not power to enjoin the judge of another court, see High on Injunctions (4 ed.), § 46.

Notwithstanding the issues involved herein have been vigorously and ably pressed upon our attention, we are compelled, by virtue of law, to affirm this cause.                                                 AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.