Argued June 21, affirmed July 27, petition for rehearing denied
August 23, petition for review denied October 5, 1972

WASHINGTON COUNTY, *Respondent, v.*
STARK ET UX (No. 31-293), *Appellants.*

499 P2d 1337

*Lloyd B. Ericsson,* Portland, argued the cause for appellants. With him on the brief were Dusenbery, Martin, Bischoff & Templeton, Portland.

*Edward J. Sullivan,* Washington County Counsel, Hillsboro, argued the cause for respondent. With him on the brief was W. Louis Larson, Assistant Washington County Counsel, Hillsboro.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

PER CURIAM.

The issue in this zoning case is whether or not the defendants-property owners had established a nonconforming use as an airport for their property prior to the adoption of a zoning code which did not provide for such use. Our review of the record leads us to the conclusion that they did not. We agree in every particular with the trial judge's opinion, and adopt it as the opinion of this court:

"This is a suit brought by Washington County seeking injunctive relief by way of a decree restraining the defendants from operating an airport on their property which is described in paragraph II of the plaintiff's third amended complaint.

"The complaint contains four causes of suit separately stated. In the first cause of suit it is alleged that the defendants are operating an airport on their premises in violation of the Washington County Zoning Ordinance enacted August 15, 1962. In the second cause of suit it is alleged that the defendants utilized their premises as a landing field in violation of the interim Zoning Code of Washington County adopted August 19, 1959. In the third cause of suit it is alleged that the defendants have operated an airport without procuring a license from the State Aeronautics Board pursuant to ORS 492.210 and the administrative rules promulgated pursuant thereto. In the fourth cause of suit it is alleged that the defendants procured

386

building permit #15882 authorizing the construction of a barn on their premises; that the structure erected pursuant to said permit is, in fact, a hangar and the plaintiff apparently seeks an order revoking the building permit.

"The defendants' answer, in addition to denying the material allegations of plaintiff's third amended complaint, alleges by way of affirmative defense that defendants used their premises as an airport for private airplanes prior to the effective date of the Washington County Zoning Ordinance and claim such use constituted an existing nonconforming use which exempts their premises from the provision of the Washington County Zoning Ordinance.

"The allegations contained in the affirmative defense are denied by plaintiff's reply.

"In a commendable effort to expedite the proof in this case counsel have entered into a written stipulation which, in part, is as follows:

" 'That, pursuant to the interim Zoning Ordinance of Washington County enacted by the County Court on August 19, 1959, and the Zoning Ordinance of Washington County, enacted by the County Court on August 15, 1962, defendants' property, as set forth in Paragraph II of plaintiff's Third Amended Complaint in Equity, was and is zoned to prohibit the. use of any aeronautical facility unless such facility existed on August 19, 1959, as non-conforming use, which defendants assert in their Answer on file herein and the plaintiff denies as set forth in its Reply ...'

■ "The controlling question in this case, then, is: Did the defendants have an existing aeronautical facility, that is, a landing field or airport established on their premises on and prior to August 19, 1959, the effective date of the Washington County interim Zoning Ordinance?

"Based upon the record before the Court, the answer to this question must be, no.

"The evidence in this case tends to establish, and the Court finds as fact, that on August 19, 1959, and for many years prior thereto, defendants' premises consisted of farm land committed to agricultural pursuits. Following defendants' acquisition of ownership they commenced slowly to clear portions of the property which was partly overgrown with brush and trees. The defendants have offered testimony to the effect that as early as 1955 they had formulated the plan to develop their property for airport purposes. To this end, they claim, they continued with the cutting of brush and trees, and in 1957, did grading and felling work to level the field which is now used as an airport.

"The major improvement which defendants claim was effected in adapting their premises to an airport prior to 1959 was the establishment of a concrete culvert. This culvert, it is contended, was constructed in 1958. The date the culvert was, in fact, installed is in dispute with some of the witnesses for the plaintiff placing the date as late as 1961.

"Whatever the date the culvert was installed, the fact remains that none of the improvements to the land effected by defendants prior to August 19, 1959, including the culvert, was inconsistent with improvement for agricultural use.

"The physical fact appears to be that the field now used as a runway or airstrip was originally a pasture or field bisected by a swale through which flowed a small stream. The evidence does show that at some point in time a culvert was installed in the swale and the swale filled so as to make the entire field approximately level. This is not an uncommon method of improving land for agricultural purposes. So that even if the Court accepts defendants' testimony that such improvements were installed pursuant to a plan to develop an airport, the fact remains that the improvements were not of such a nature as to commit the land to use as an airport.

"The next consideration is whether or not the defendants' premises were, in fact, used as a landing field prior to August 19, 1959, and, if so, was such use of such a nature that it can fairly be said that the use was an 'existing use' within the meaning of that term in zoning law.

"The evidence on this subject is that the first landing of airplanes on defendants' land occurred in 1958 or early 1959. These landings were infrequent touch-downs by pilots of private planes. There were no facilities for these planes prior to August 19, 1959, and the landings were so infrequent that even close neighbors were not aware that the landings occurred. That the landings were infrequent and minimal is corroborated by the aerial photographs received in this case.

"The Court believes that any landing of aircraft that occurred on defendants' premises by the effective date of the interim zoning ordinance is similar in nature to planes landing in a hayfield or cow pasture. In other words, such landings as occurred on defendants' premises prior to August 19, 1959, were of such minimal character that they cannot fairly be said to constitute an existing nonconforming use on the date the interim zoning ordinance took effect. This is especially true when considered in the light of the fact that by that date no substantial improvements had been effected to defendants' land inconsistent with agricultural use.

"It may well be that defendants had a plan to develop their land for airport use prior to and at the time the interim zoning ordinance took effect. But this is not enough. The land itself must have been substantially committed to the proposed use by improvement or other conversion.

"This does not appear to be fact in this case. On the contrary, the evidence suggests that on August 19, 1959, defendants' premises had all the characteristics of farm land despite such improvements as defendants may have installed thereon

by that time. There was not by that time such improvement to and commitment of the land to airport purpose so as to vest in defendants a property right which the law will protect.

"As said in the New York case of People v. Miller, 304 N.Y. 105; 106 N.E.2 34, 36 [1952],

" '... existing nonconforming uses will be permitted to continue, despite the enactment of a prohibitory zoning ordinance, if, and only if, enforcement of the ordinance would, by rendering valueless substantial improvements or businesses built up over the years, cause serious financial harm to the property owner. This rule, with its emphasis upon pecuniary and economic loss, is clearly inapplicable to a purely incidental use of property...'

"The plaintiff may have a decree and restraining order based upon its first two causes of suit.

"I do not consider that the third cause of suit has been sustained by the evidence.

"With respect to the fourth cause of suit, it appears that the defendants did obtain a building permit authorizing them to build a barn. The structure can be used for the purpose authorized, but not as a hangar.

■ "Defendants have urged that licensing of airports by the State of Oregon has pre-empted county zoning control. No authority for this contention has been supplied. The Court has found none and is of the opinion that this contention is not well taken.

"* * * * * *"

Affirmed.