Submitted June 26, affirmed September 18, petition for rehearing
denied October 11, petition for review allowed
December 28, 1972, see later volume of
Oregon Reports

CLACKAMAS COUNTY, *Respondent, v.*
HOLMES ET UX (No. 74734),
*Appellants.*
501 P2d 333

[ 1 ]

2

Sidney A. Brockley, and Jack, Goodwin & Anicker, Oregon City, for appellants.

Roger Rook, District Attorney, and Michael D. Montgomery, Deputy District Attorney, Oregon City, for respondent.

Before SCHWAB, Chief Judge, and FORT and THORN-TON, Judges.

SCHWAB, C.J.

In this equity proceeding brought by Clackamas County the trial court enjoined defendants from completing the construction of a chicken processing plant on the principal ground that such a plant would be in violation of the county zoning ordinance.[1] On appeal defendants contend:

(1) The applicable county zoning ordinances

---

[1] Our decision here makes it unnecessary to discuss the other issue raised.

were invalid because they were vague and failed to provide property owners with adequate notice of the intended zoning; and

(2) Even if the ordinances were valid, the defendants have a right to use the property as a chicken processing plant because they established a prior nonconforming use of the property.

Clackamas County adopted zoning ordinances in 1960, 1966, 1967 and 1970. While the defendants challenge the validity of all the zoning ordinances, the parties' briefs do not devote particular attention to the ordinance adopted in 1966. It nonetheless warrants consideration. The 1966 ordinance was the first Clackamas County zoning ordinance which purported to zone the defendants' property, and a determination of its validity is relevant in resolving defendants' claim that they have established a prior nonconforming use of their property.

In 1960, Clackamas County adopted a zoning ordinance which established categories of zoning districts, specified the zoning restrictions applicable to property within the boundaries of any such zoning districts, and applied the ordinance to some but not all Clackamas County property. When defendants purchased the property in question in 1965, it was not zoned.

In 1966, Clackamas County adopted an Interim Zoning Ordinance for the area referred to as the Expanded Clackamas County Zoning Area. Defendants' property was contained within the Expanded Clackamas County Zoning Area and the 1966 ordinance purported to zone defendants' property RA-1 (Rural [Agricultural] Single Family Residential District).

A chicken processing plant is not permissible in such a zone.

In 1967, Clackamas County adopted a permanent zoning ordinance for certain "Corridor Zoning Areas." The record shows that the defendants' property was contained within one of the designated Corridor Zoning Areas and was classified RA-1.

In 1970, Clackamas County amended the county zoning plan by adopting new zoning maps. The authorization for this type of amendment procedure is implicit in the language of the 1960 ordinance. The record shows that the 1970 maps continued to designate the defendants' property RA-1.

After the purchase of the property in February 1965, the defendants began to plan for and make improvements. Defendants planted cover crops, increased the capacity of the electrical service to the property, built an irrigation system, arranged direct telephone communication with Portland, and hired a designer to begin site and building plans for a chicken processing plant. As of March 1966, when the interim zoning went into effect, the defendants had already expended approximately $33,000 on plans and actual improvements.

The defendants assert that all expenditures were made for the sole purpose of developing the property for use as a chicken processing plant. However, after the property was zoned RA-1, the defendants took no steps to initiate actual construction of the proposed plant, and, instead, began to use the property as improved for grazing cattle. It was not until 1970 that work was begun on the actual construction of the plant. At this point the county began these proceedings.

■ In 1960, the county planning commission submitted to the county commissioners a proposed zoning ordinance. As noted above, in that same year the county governing body adopted this ordinance by an order which stated, "IT IS HEREBY ORDERED that the Zoning Ordinance for Clackamas County, attached hereto and by this reference made a part hereof, be and the same hereby is approved and adopted * * *." Defendants offered evidence to show that there was never any physical attachment of the order and the proposed ordinance, and contend that this is a fatal defect. However, defendants have offered no compelling authority to support the proposition that the mere failure to carry out the physical attachment of two documents, standing alone, is sufficient ground for declaring those documents to be void and of no legal effect. Defendants cite *County of Winnebago v. Cannell,* 376 Ill 277, 33 NE2d 478 (1941), in support of their contention. This case involved a zoning ordinance which designated zoning districts " 'as shown on the Use District map attached hereto and expressly made a part of this ordinance.' " The Illinois Supreme Court affirmed the trial court decision which held the zoning ordinance invalid. However, the trial court did not rest its decision on the mere failure to attach the maps; rather, the court based its holding on the fact that there was no showing in the record that the maps ever existed. Here the record shows that both the county order and a copy of the ordinance the order proposed to adopt were on file and available for inspection at the Clackamas County Clerk's office. The documents were filed within one day of each other. Anyone searching the files and finding that the ordinance was not attached to the enacting order would only have to ask the clerk to produce the missing docu-

ment. Since the evidence shows the documents were on file and available in the same office, and that there was no identification issue, we conclude that the validity of the ordinance need not be determined by the absence or presence of a staple. We conclude that the trial court correctly found the 1960 ordinance valid.

Defendants argue that even if the 1960 ordinance is valid, the 1966, 1967 and 1970 ordinances were invalid.

■ Defendants assert that the language employed in the 1966 and 1967 ordinances is so vague and confusing as to preclude a reasonable person from determining what the ordinances were authorizing. The material part of the 1966 ordinance provides:

"IT IS HEREBY ORDERED that pursuant to ORS 215.104, such portions of said Zoning Ordinance for Clackamas County [1960 Ordinance] as shall be applicable to the above mentioned Expanded Clackamas County Zoning Area, as designated on the Interim Zoning Maps of the Expanded Clackamas County Zoning Area, attached hereto and by this reference made a part hereof, be and the same is hereby enacted as the Interim Zoning Ordinance for the Expanded Clackamas County Zoning Area * * *."

While the draftsmanship does not warrant emulation, a Clackamas County property owner could look at this language and the maps referred to, and determine how his property was being affected. Defendants claim that the statement, "such portions of said Zoning Ordinance for Clackamas County as shall be applicable to the above mentioned Expanded Clackamas County Zoning Area" conveys no clear information as to what is being applied, since the 1960 ordinance provides classifications and restrictions

without reference to specific geographical locations. The language of the ordinance, considered as a whole, states that the ordinance would be applied to the Clackamas County Zoning Area, and that the specific classifications for given geographical locations in the Expanded Clackamas County Zoning Area were as designated on the interim zoning maps referred to by the ordinance. The pertinent language in the 1967 ordinance is not materially different. Contrary to defendants' assertions the 1966 and 1967 ordinances meet the test of certainty laid down by *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 364 P2d 627 (1961).

■ Defendants further assert that the 1966 and 1967 ordinances were invalid because the maps referred to in the ordinances were not attached to the ordinances, and as to the 1966 ordinance were not even shown to exist. Defendants' first point (non-attachment) has already been dealt with above. The question of the existence and identification of the 1966 maps was not raised by the defendants at trial. They briefly advance this argument for the first time in their reply brief. Defendants imply that without direct evidence supporting the fact of the 1966 maps' existence we must assume that they did not exist. We disagree. There was indirect evidence of the existence of the maps. Defendants themselves testified that as early as 1966 they were aware that the 1966 interim ordinance classified their property RA-1. Furthermore, defendants acknowledged the RA-1 classification of their property when they requested a zone change in December of 1966.[2]

---

[2] Washington Co. v. Stearns, 3 Or App 366, 474 P2d 360 (1970), dealt with the effect of irregularities in zoning ordinances. We stated therein:

"Defendant complains that interlineations and other irregu-

In view of the foregoing we need not review the 1970 ordinance in detail. If the 1970 ordinance which purported to continue to classify defendants' property as RA-1 did not amend the zoning maps adopted in 1967, the classification of defendants' property would continue to be determined by reference to the maps as they were amended in 1967.

■ ■ We turn now to defendants' claim of a prior nonconforming use. A property owner claiming a valid nonconforming use is required to prove it existed prior to the enactment of the zoning ordinance which prohibits such use. 1 Anderson, American Law of Zoning 327, § 6.09 (1968). The general rule is that the pre-existing use must be an actual use, not merely a contemplated use; that is, the use must actually have been in existence at the time the zoning restriction becomes effective. 2 Rathkopf, The Law of Zoning and Planning 58-3 (3d ed 1966). There is an exception to the "actual use" requirement in situations where a property owner has incurred substantial and legally sufficient expense in reliance upon a previously issued building permit. 1 Anderson, American Law of Zoning 369, § 6.26 (1968); 2 Rathkopf, The Law of Zoning and Planning 58-10 (3d ed 1966). In such cases there exists a "vested right" to the nonconforming use,

---

larities in the ordinance make it vague. Our inspection of the ordinance and maps discloses nothing of this sort in any part affecting defendant's land. In *Vedovell v. City of Northlake*, 22 Ill2d 611, 177 NE2d 124 (1961), an ordinance was held valid as to the plaintiff who had knowledge of the zone in which his property was located, although the zoning map was absent altogether:

"'* * * Certainly in so far as plaintiff's property was concerned, no ambiguity was shown to exist and no injury or prejudice was suffered by the plaintiff by reason of the absence of a zoning map * * *.' 22 Ill2d at 615." 3 Or App at 371.

even though the use was not in existence at the time the zoning restriction became effective.

Defendants acknowledge that there has been no actual use of their property as required by the general rule, but argue that they qualify under the "vested rights" theory because they expended a substantial sum in contemplation of the construction of a chicken processing plant.

Courts have found vested rights to exist not only where expenditures have been substantial, but also where there has been a substantial change of position in relation to the land, or where substantial obligations have been incurred. 2 Rathkopf, The Law of Zoning and Planning 57-7 (3d ed 1966).

■ In order to be substantial, the expenditures must be made before the enactment of the adverse zoning and be exclusively related to the proposed use. *See, Town of Hempstead v. Lynne,* 32 Misc2d 312, 222 NYS2d 526 (1961). The latter requirement is illustrated in the *Hempstead* case where the court held that the building or improvement of a road is not exclusively related to the construction of a shopping center if the road is as easily adaptable to uses permitted under an amendment to the zoning ordinance which outlaws shopping centers. *See also, Washington County v. Stark,* 10 Or App 384, 499 P2d 1337, Sup Ct *review denied* (1972).

Since the first adverse zoning of defendants' property occurred in March of 1966, only the expenditures made prior to that date are relevant to the determination of substantiality.

Only expenditures for building plans ($2,497.85) and possibly the direct telephone line agreement (the record does not show the cost of this improvement) can be said to have been exclusively related to the

proposed chicken processing plant. The remaining improvements were as consistent with agricultural use as they were with the proposed chicken processing plant. The defendants planted fescue grass, drilled a well, installed pumps and pipes, and increased the property's electrical input capacity. All of these expenditures related to the construction of an irrigation system.

The record shows that from 1966 the defendants made use of the irrigation system and cover crop for grazing cattle. Thus the defendants cannot claim that these improvements were exclusively related to the proposed use of the property as a chicken processing plant. We note that in March of 1968, March of 1969, and March of 1970, the defendants submitted to the state signed applications for tax exemptions under ORS 308.375 in which they stated, "This land * * * is being used exclusively as a bona fide farm and has been so used for each of the two years immediately preceding this year."

■ Defendants testified that the cost of completing the chicken processing plant would be between $400,000 and $500,000. When placed in the perspective of this estimated cost of completion, the $2,497.85 expenditure for building plans does not qualify as "substantial."

Affirmed.