Argued October 5, reversed and remanded December 3, 1973,
petition for rehearing denied January 3, petition
for review denied March 5, 1974

# TWIN ROCKS WATSECO DEFENSE COMMITTEE et al, *Appellants, v.* SHEETS et al (No. 16-077), *Defendants,* CULVER, *Respondent.*

516 P2d 472

*Charles J. Merten,* Portland, argued the cause and filed the brief for appellants.

*Douglas E. Kaufman,* Tillamook, argued the cause for respondent. With him on the brief were McMinimee & Kaufman, Tillamook.

Before SCHWAB, Chief Judge, and FOLEY and TANZER, Judges.

SCHWAB, C. J.

Plaintiffs' complaint and supplemental complaint[①] allege, in essence, that: (1) on April 14, 1972, an application was filed with appropriate Tillamook County officials to rezone an area from R-3 (high density residential) to R-2 (medium density residential);

[①] Intervenor argues that the pleadings are defective for technical reasons. We find no merit in this contention.

(2) apartment buildings are a permitted use in areas zoned R-3, but are not a permitted use in areas zoned R-2; (3) on May 25, 1972, intervenor, with actual knowledge of the pending zone change application, applied to county officials for a building permit to construct a 32-unit apartment building; (4) on June 19, 1972, a building permit was issued to intervenor; (5) on July 26, 1972, the county commissioners rezoned the land in question from R-3 to R-2; and (6) therefore, intervenor's contemplated construction of the apartment building is now prohibited by the new zone.

Intervenor's demurrer raised the legal question of whether he was entitled to proceed with construction of the apartment building in spite of the zone change solely on the basis of the building permit that was valid under existing zoning when it was issued. The trial court answered this question in the affirmative and sustained the demurrer. Plaintiffs appeal. We reverse.

In general, Oregon statutes authorize county officials to formulate zoning ordinances that meet their local needs. *See,* ORS ch 215. However, the same statutes establish a basic outline and provide certain minimum standards with which each county zoning ordinance must comply. For present purposes, the relevant minimum standards are:

> "The lawful use of any building, structure, or land at the time of the enactment of any zoning regulation or amendment thereto, may be continued as such although not in conformity with the zoning regulation * * *." ORS 215.130 (5).

> "The location, erection, construction * * * of a building or other structure * * * in violation of * * * [a zoning] ordinance or regulation * * * shall be deemed a nuisance." ORS 215.180.

"No person shall * * * construct * * a building or other structure * * * in violation of * * * [a zoning] ordinance or regulation * * *." ORS 215.190.

■ The general rule is stated in ORS 215.180 and 215.190 — it is illegal to maintain a building or other use of land that does not comply with *existing* zoning ordinances at the time construction begins. This general rule is qualified by ORS 215.130 (5) which allows the continued "use of any building" after adoption of a zoning ordinance or amendment even if the building is "not in conformity with" the ordinance or amendment. As used in ORS 215.130 (5), "use of any building" is a term of art; it means an existing building or a building upon which substantial work has been completed — it does not mean a building planned, but not under construction. *Clackamas County v. Holmes,* 11 Or App 1, 501 P2d 333 (1972), *reversed* 265 Or 193, 508 P2d 190 (1973); *Washington County v. Stark,* 10 Or App 384, 499 P2d 1337, Sup Ct *review denied* (1972).

■ It follows that these statutes require rejection of the notion that mere possession of a building permit entitles a property owner to proceed with construction prohibited by an amendment to a zoning ordinance if there has been no actual construction before the amendment was adopted. In such a situation, adoption of a zoning amendment in effect revokes outstanding building permits which have not yet been substantially acted upon.

This conclusion is supported by authority in analogous situations.

■ In general, a permit or license does not create irrevocable rights, but, instead, is subject to modification or revocation by subsequent changes in law.

E.g., *Asbury Hospital v. Cass County,* 72 ND 359, 7 NW2d 438 (1943); *Railway Exp. Agency v. Commerce Com.,* 374 Ill 151, 28 NE2d 116 (1940); *see generally,* 51 Am Jur2d 133, Licenses and Permits § 145.

Oregon cases are in accord. In *Portland v. Cook,* 48 Or 550, 87 P 772, 9 LRA (ns) 733 (1906), defendants were prosecuted for violating an ordinance prohibiting maintaining a slaughterhouse. They defended on the grounds that an earlier ordinance had granted them the right to operate a slaughterhouse. The Supreme Court held the rights created by the earlier ordinance were subject to modification or revocation by the later ordinance. *See also, Daniels v. City of Portland et al,* 124 Or 677, 265 P 790, 59 ALR 512 (1928), in which it was held that a property owner who built in compliance with existing requirements had to nevertheless comply with additional requirements enacted after the building was completed.

Turning to the specifics of building permits and zoning laws, the commentators state:

> "It is generally held that neither the filing of an application for a building permit nor the issuance of a building permit, although valid and issued in conformity with the provisions of the zoning ordinance, alone confers any rights in the applicant or permittee as against a change in the zoning ordinance which imposes further limitations upon the use or structure proposed. * * *
> "Where the landowner has done nothing subsequent to obtaining the permit, he is usually held to be bound by any change in the zoning ordinance even if its effect is to nullify the permit." (Footnotes omitted.) 2 Rathkopf, The Law of Zoning and Planning 57-2 to 57-4, § 1 (3d ed 1966).
> "The general rule is that permits for buildings and businesses are not per se protected against

> revocation in effect by subsequent enactment or amendment of zoning laws prohibiting the building, business or use for which they have been issued. That is to say, a municipality may revoke a permit where zoning is enacted or changed to prohibit the use and where the permittee has not materially changed his position in reliance on the permit. Otherwise stated, the legality of a use is determined by the zoning law governing at the time of its commencement, not by the zoning law prevailing when a permit issues * * *." 8 McQuillin, Municipal Corporations 497, § 25.156 (3d ed 1965).

It appears that few, if any, of the cases cited by the commentators were decided on the basis of statutes as specific as ORS 215.130 (5), 215.180 and 215.190. Instead, most of those cases approach the problem on a common law basis, balancing the interests of the public in effective land use planning against the interests of individual property owners in knowing for certain when they can proceed with and complete a construction project. In Oregon this balance has already been struck by the above-discussed statutes.

4. Finally, we note that although no prior Oregon cases have reached this exact result, in dicta we have assumed the rule to be:

> "* * * There is an exception to the 'actual use' requirement [for a nonconforming use] in situations where a property owner has incurred substantial and legally sufficient expense in reliance upon a previously issued building permit * * *." *Clackamas County v. Holmes,* 11 Or App at 9.

The Supreme Court, in reversing our determination in that case that there had not been substantial enough expense to qualify as a nonconforming use, did not express any disagreement with this proposition. *See also,*

*Clackamas County v. Emmert,* 14 Or App 493, 513 P2d 532, Sup Ct *review denied* (1973).

■■ For the reasons stated above, we now conclude that our statement in *Holmes* is correct, i.e., that the minimum necessary to establish a nonconforming use is a building permit plus substantial action thereon, and that a building permit, standing alone, is insufficient to do so.

Reversed and remanded.

FOLEY, J., specially concurring.

The question presented in this case is whether the holder of a valid building permit may proceed with construction thereunder in the face of a subsequent zone change purporting to prohibit the type of construction covered by the building permit. Our holding is that the holder of the building permit proceeds at his peril. I agree that existing Oregon law suggests the result reached in this case and for that reason I concur in the opinion. However, I desire to point out that several other jurisdictions have refused to accept the majority rule for what appears to be good reason. For example, the Supreme Court of Washington held in *Hull v. Hunt,* 53 Wash2d 125, 331 P2d 856 (1958) :

"Notwithstanding the weight of authority, we prefer to have a date certain upon which the right vests to construct in accordance with the building permit. We prefer not to adopt a rule which forces the court to search through (to quote from *State ex rel. Ogden v. Bellevue,* [45 Wash2d 492, 275 P2d 899 (1954)]) 'the moves and countermoves of * * * parties * * * by way of passing ordinances and bringing actions for injunctions'—to which may be added the stalling or acceleration of administrative action in the issuance of permits—to find that date upon which the substantial change of position is

made which finally vests the right. The more practical rule to administer, we feel, is that the right vests when the party, property owner or not, applies for his building permit, if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted be consistent with the zoning ordinances and building codes in force at the time of application for the permit." 53 Wash2d at 130.

The City Planning Code of San Francisco⊕ provided that once a permit had been granted, subsequent amendments to the zoning ordinance would not affect it as long as construction was diligently pursued in accordance with the building code. The California Supreme Court in commenting on this provision said:

"Prior to the enactment of section 150, even a permit which had achieved administrative finality could be revoked on the basis of a subsequent change in the zoning laws. The permittee could win immunity from such 'ex post facto' revocation only by constructing a substantial portion of the structure authorized by his permit in good faith reliance upon the prior law. A permittee who delayed construction in the face of an impending amendment to the zoning laws might find that he had not progressed far enough in time to qualify for immunity; one who proceeded with unseemly haste ran the risk that his conduct might bear the stigma of bad faith. No facile formula informed the permittee how to strike the delicate balance which would afford the desired immunity." (Footnotes omitted.) *Russian Hill Improvement Assn. v. Board of Permit Ap-*

⊕ Section 150, subdivision (d) provided:

"Any building or use for which a permit has been lawfully granted prior to the effective date of an amendment to the City Planning Code * * * may be completed and used in accordance with the approved plans, provided that construction is started and diligently prosecuted to completion * * * and such building or use shall thereafter be deemed to be a lawfully existing building or use."

*peals,* 66 Cal2d 34, 39, 56 Cal Rptr 672, 423 P2d 824 (1967).

I agree with the reasoning in the above cases that the better rule would be one which provides the most certainty, that is, that the right to build be fixed on the date the permit issues. This was the holding of the circuit court.