DECISION
Plaintiff appeals the Yamhill County Board of Property Tax Appeals Order, dated March 18, 2009, reducing the 2008-09 real market value of land identified as Account 541765 (subject property; also referred to as Lot 24).[1] A telephone trial was held on January 13, 2011. Jodi Bradley (Bradley), Appraiser II, Yamhill County Assessment and Taxation, and Oregon certified appraiser, appeared and testified on behalf of Plaintiff. Brett Veatch (Veatch), Real Estate Broker, appeared and testified on behalf of Defendants.
Plaintiffs Exhibits 1 through 11 and 15 through 17 were admitted without objection. Defendants' Exhibits A and X were admitted without objection.
 I. STATEMENT OF FACTS
In her opening argument, Bradley stated that the Yamhill County Board of Property Tax Appeals Order was filed in "error" and was "not supported by the evidence." She testified that the subject property is located in the Ra'Nor Estates subdivision that was developed by Ralph Johnson (Johnson). Johnson filed a Measure 37 application that was approved by the Yamhill County Department of Planning and Development on February 24, 2005, and subsequently *Page 2 
amended "to correct the scrivener's error." (Ptf s Exs 1; 2.) The Yamhill County Department of Planning and Development Board Order 05-535 stated that Johnson was "authorized to make application to divide the subject property into one acre lots and build a single family dwelling on each undeveloped lot, a use permitted on the subject property at the time claimant acquired the property." (Ptf s Ex 2 at 2.) Bradley testified that Johnson subsequently filed an application for subdivision that was approved in June 2006. (Ptf s Exs 3; 4.) In its approval of the subdivision, the Yamhill County Department of Planning and Development required that the "following language shall be placed on the face of the final plat:
 "Lots shown on this plat were authorized by waivers of land use regulations by Yamhill County and the State of Oregon pursuant to ORS 197.352, 2005 replacement part (Measure 37). * * * Yamhill County makes no representations or warranties as to the transferability of the lots or any development rights related to the lots."
(Ptfs' Ex 4 at 2.)
Bradley testified that the subject property was listed for sale by Copper Gold Real Estate in September 2007 for $149,900. (Ptf s Ex 5 at 2.) She testified that in October 2007, the Yamhill County Department of Planning and Development issued Johnson a permit to build a single family dwelling. (Ptf s Ex 6 at 1.) Bradley testified that Defendants paid $250,000 for the subject property and a second parcel, Lot 20, and the statutory warranty deed transferring title to Defendants was recorded on November 26, 2007. (Ptf s Ex 7 at 1.) According to Bradley, "on December 13, 2007, a Certificate of Occupancy was issued for dwelling improvements on the subject property." (Ptf s Ex 9.)
Bradley testified that, as of January 1, 2008, one-acre lots in the same subdivision as the subject property were advertised for sale on a website. (See Ptfs Ex 11.) Bradley testified that *Page 3 
the listing prices ranged from $234,900 to $699,900, and, according to the listing, "two properties had sold and four sales were pending." (Id. at 4, 5.) Bradley testified that Lots 20 and 21 included "replacement dwelling permits in their price structure," stating that the subject property also included a replacement dwelling permit. (Id. at 5.) Veatch testified that there has been no "interest and no sales since January 2008."
Bradley testified that, at the Yamhill Board of Property Tax Appeals hearing, one of the board members stated that the issue of value should be decided by a "magistrate." (Ptf's Ex 15.) She testified that, at the same hearing, others discussed the property, title transfer, and right to build on the property. Bradley testified that Michael Brandt, a county planning department employee, stated that because of the county's temporary building moratorium a property owner could not get a building permit. (See Ptf's Ex 17.) Bradley testified that a "land title" company will "never guarantee" what a property owner "can or cannot do with property."
Bradley testified that she prepared a Comparable Sales Analysis. (Ptf's Ex 16.) She explained that the four comparable properties had sold between January 2007 and January 2008 and are located between 2.92 miles and 5.8 miles from the subject property. (Id.) Bradley testified that she adjusted the sale price for date of sale, size, view, on-site development, and improvements. (Id.) She testified that she confirmed each sale. Based on the four adjusted sale prices, "the county's opinion of value [was] based at $224,750." (Id.) That value is the same as the adjusted value of comparable 4 which is "most comparable to subject with the least amount of adjustments and closer in size." (Id.) Even though the comparable sales approach indicated a real market value of $224,750, Plaintiff requested that the court conclude that the 2009-10 subject property's real market value was $174,427. Bradley did not explain how she arrived at *Page 4 
the requested value. She mentioned a "stipulated value," but did not provide any explanation or evidence. Veatch challenged the comparability of the property she selected to the subject property and testified that Bradley made "no adequate adjustments" for Measure 49 impact on the subject property.
In response to Veatch's questions, Bradley testified that, in making the value determination, she concluded that there were no "clouds" on Defendants' title, there should be no adjustment for the county's temporary building moratorium, there were no other governmental restrictions on the subject property, and the subject property was "buildable." Bradley concluded that the land was "transferable with limitations." The parties dispute whether there was a "legal" building moratorium in Yamhill County. Veatch testified that there was no public hearing as "required by ORS 197.520" but there was a "governmental restriction" on the subject property "without the consent of Defendants." (See Defs' Ex L at 1.) In support of his conclusion that no building moratorium was in place for the subject property, Veatch submitted an email from Mike Brandt, sent September 9, 2010, stating:
 "There is a moratorium for properties within the Cove Orchard Sewer District because of limitations with the capacity of the sewer/septic system. Otherwise, I am not aware of any other building moratorium in the County. mb"
(Defs' Ex M at 1.) Bradley cited Baber v. Curry CountyAssessor (TC-MD No 020215A (Dec 2002)) and stated that, even if a building moratorium is in place, "it does not" necessarily "reduce a property's value." Veatch commented that the Baber court agreed that the "moratorium could have an effect on market value" but the property owner did not submit evidence showing that effect on his property's real market value. / / / / / / / / / *Page 5 
Veatch testified that the subject property was subject to Measure 49 and "until the vesting decision was finalized and unappealed" title to the subject property was not "clear." He concluded that "title could be transferred" but with "a cloud." Veatch testified that Measure 49 created a "restriction on use." Veatch referenced a memorandum issued by John M. Gray, Jr. (Gray), Yamhill County Counsel. (Defs' Ex F.) In his memorandum, Gray wrote:
 "Effective December 6, 2007, Measure 37 waivers issued by the state and the county are no longer valid. The basis for concluding the state waiver is no longer valid is new temporary rule OAR 660-041-0060 adopted by the Land Conversation and Development Commission earlier this month.
 "* * * * *
 "On December 19, 2007 the Board adopted Ordinance 823 to establish a process in Yamhill County for a Measure 37 claimant to obtain a final county vesting decision for purposes of Measure 49. A outcome favorable to the applicant under this process would allow the Planning Director to sign plats submitted after December 6, 2007 that resulted from Measure 37 waivers."
(Id. at 2, 3.)
Veatch referenced an email exchange between him and Mike Brandt, a Yamhill County employee, reciting the impact of Measures 37 and 49 on a replacement dwelling permit:
 "(5) That Yamhill County would allow a claimant to utilize a replacement dwelling permit which was obtained on a Measure 37 propert[y], if such was obtained prior to the effective date of Measure 49. However, that utilization of such a replacement permit would be at the owner's own risk and required the indemnification of Yamhill County."
(Defs' Ex B at 1.)
He also submitted a document entitled "ACKNOWLEDGMENT REGARDING BUILDING OR DEVELOPMENT PERMIT (following issuance of Final County Vesting *Page 6 
Decision where Decision Challenged)" which was signed by an individual who owns property in the same subdivision as the subject property. That document stated:
 "I acknowledge that if the building or development permit is issued to me by the county, I proceed on building or development at my own risk. I understand it is possible that the county's issuance of the building or development permit could be overturned by a court. I acknowledge and agree that the county is not responsible for any costs associated with my reliance on the permit."
(Defs' Ex C at 1. (Emphasis in original.))
Veatch submitted a letter from John L. Collins, Presiding Judge, Yamhill County Circuit Court, discussing transfer of non-transferable Measure 37 rights:
 "A use, however, completed prior to December 6, 2007, may be transferrable because it does not fall under Measure 49. But, as discussed above, the use was not completed
prior to that date in these cases, including the Johnson case which involves a transfer of some of the lots. The fact that individual lots can be transferred after plat approval, does not mean that the new owner has any vested right to use that lot or parcel in a nonconforming way."
(Defs' Ex E at 9. (Emphasis in original.)) Judge Collins' letter cites Parks v. Tillammok County Commission,11 Or App 483 (1981), holding that a "`vested right' is an incomplete nonconforming use [and] [a] nonconforming use relevant here is a use that was lawful at the time the property was acquired — i.e., before the applicable zoning ordinance was enacted and effective." (Id.) Judge Collins concluded:
 "Stated otherwise, the landowners can only transfer what they have that is transferrable. If they have a Measure 37 waiver, it is not transferrable; therefore the transferee did not obtain it and can do no more than perhaps pitch a tent on the property."
(Id. at 10.)
Veatch testified that the "200 square foot structure on the subject property" has no "value as a residential structure" and there is no water, power, or sewer. He testified that Defendant planned to replace the 200 square foot structure with a residential structure. In response to Bradley's question, Veatch testified that Defendants do not have a "replacement *Page 7 
dwelling permit;" they have "a temporary agreement" that their replacement dwelling permit request will be not "opposed." Referencing guidance from the Oregon Department of Land Conservation Development and the Oregon Department of Justice regarding Ballot Measure 47, dated December 31, 2007, Veatch quoted the following response to a question whether a claimant had a common law vested right to carry out a use under Measure 49, section 5(3):
 "d. The issuance of a building permit authorizing the claimant to carry out a use of the property? The issuance of a building permit for construction of a use does not, by itself, create a common law vested right to complete construction of the use. Twin Rocks Watseco Defense Com. V. Sheets, 15 Or App 445 (1973).
 "e. The recording of a final plat, creating new lots or parcels? The recording of a final plat gives the owner of the property the legal right to convey the lots or parcels created by the plat. ORS 92.016-025. However, the fact that a lot or parcel is lawful and that it may be sold does not mean that the new owner has a vested right to use that lot or parcel in a particular way. * * * Dividing the property into lots or parcels does not, by itself, create a common law vested right to building homes or carry out some other physical use of the property."
(Defs' Ex V at 3, 4. (Emphasis in original.)) Bradley testified that Defendants do have a "replacement dwelling agreement that is good for four years" and they included that information in their listing of the property on "RMLS."
Veatch testified that "conventional financing" to purchase the subject property or similar properties subject to Measure 49 was not "available." To support his testimony, Veatch offered "Excerpts from BOPTA Hearing Recording 2-25-2008," Defendant's Exhibit H. Clayton Carter, Title Examiner, First American Title Insurance Co., testified that "it does present a cloud with Measure 37 being of record in the board orders." (Id.) Veatch referenced a letter from Janet *Page 8 
Winder, County Manager, First American Title Insurance Company of Oregon, dated December 3, 2008, which stated:
 "The following language is added to any report or policy within that [Ra'Nor Estates] subdivision:
 "* * * The Company expressly does not insure the validity of enforceability of the order set forth above and coverage regarding this matter is subject to the `Exclusions from Coverage 1 (a)' as set forth in the policy issued (or to be issued) hereunder."
(Defs' Ex I at 1.) Bradley disagreed with Veatch, testifying that the title company would insure "but needs special language."
Veatch testified that, with the uncertainty created by Measure 49 and the required language referenced above, it was "virtually impossible to sell" property such as the subject property and that, even though the subdivision developer listed lots for sale, there were "zero inquiries," and "no offers and no questions." Bradley questioned whether the 108 days the subject property was on the market was an "adequate number of days to test the market," stating that a "typical marketing period is six to nine months."
Defendant stated in its Hearing Brief Submission Of Exhibits For Entry Into The Record (Brief) that:
 "On December 29th, 2010, Judge Haselton of the Oregon Court of Appeals, reversed and remanded the vesting determination for Ra'Nor Estates, the development in which Defendant Taxpayer's Lots are located (Biggerstaff v. Yamhill County/Johnson, CV080224 A140978), back to Yamhill County. This effectively places the vesting process back at square-one. Further, it means that the restrictions currently in place will continue and the status of what uses are allowed on Defendant Taxpayer's Lots will be limbo and will remain uncertain for the next two or three years." (Id. at 5.)
Veatch characterized the "vesting process" as an "undefinable process with an unknown outcome" and that Measure 49 "stigmatized the property until the status is defined." Veatch *Page 9 
testified that the subject property is zoned "farm" and until it is vested "Defendants cannot do anything." (Defs' Ex X.)
In arriving at his determination of the subject property's real market value, Veatch relied on an appraisal prepared by Wayne Richards (Richards), the Richards Group. (See Defs' Ex A.) Defendant stated:
 "Defendant Taxpayer seeks an adjustment of the assessed Real Market Value (RMV) for Lot 20 to $15,300, and an adjustment of the assessed Real Market Value (RMV) for Lot 24 to $15,600, as shown in an appraisal prepared by Wayne Richards of the The Richards Group, Inc. (Exhibit A; Richards Group Appraisal — page 45 of appraisal report)."
(Defs' Brief at 5.) Richards did not testify. Bradley noted the "hypothetical conditions stated in the appraisal" and concluded that there is "no analysis to support" the requested "values."
 II. ANALYSIS
The issue before the court is the 2008-09 real market value Defendants' property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [2] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2) and OAR 150-308.205-(A)(2). Neither party discussed the applicability of the cost or income approach. *Page 10 
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corpand McKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute,The Appraisal of Real Estate 335 (12th ed 2001). Plaintiff relied on the comparable sales approach. Bradley selected four properties and adjusted each sale price for time, size, location, view, on-site development, and structure. She inspected each property and confirmed that the sale was arm's length. Even though she testified that the subject property's real market value was not negatively impacted by the December 2007, enactment of Measure 49, Bradley concluded that the subject property's real market value was approximately 22.4 percent less than the indicated value of the four comparable sales. (Ptf's Ex 16.) At trial, Bradley did not explain and provide supporting evidence as to how she determined the 22.4 percent adjustment. Bradley offered no explanation how and why she determined a real market value substantially less than the listing prices stated on the subdivision marketing website for land similar to the subject property close in time to the assessment date. In her testimony, Bradley referenced a stipulated agreement. The court had no evidence of a stipulated agreement or the basis for determining the stipulated value.
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief." ORS 305.427. Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence."Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. of Rev., *Page 11 4 OTR 302 (1971)). Competent evidence includes appraisal reports, sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers.
There is overwhelming evidence that, as of the assessment date, Measure 49 could affect a use that was not fully-developed under Measure 37. The parties discussed and submitted evidence showing that the subject property is located in a subdivision owned by an individual who was granted a Measure 37 waiver. (Ptf's Summ of Case at 1.) According to Veatch, there have been no subsequent sales of lots in the subdivision where the subject property is located since the enactment of Measure 49. There was no evidence to the contrary. Veatch alleges that the lack of sales is directly tied to Measure 49. Bradley testified that Measure 49 had no effect on the subject property's real market value. Neither party submitted evidence to verify the Measure 49 effect, if any, on the subject property's real market value.
Legal uncertainties or other factors have resulted in neither party submitting any evidence, in this case, of open-market sales of properties with similar Measure 37 waiver issues like the subject property. ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."
Plaintiff's comparable market approach did not state whether the comparable properties like the subject property were authorized by waivers of land use regulations, commonly referred to as a Measure 37 waiver. Plaintiff made a reduction to real market value without any evidence to *Page 12 
support the adjustment. The court has no way to measure whether that adjustment accurately measures the impact of Measure 49. There is no verifiable evidence using one of the statutory valuation approaches, specifically the comparable sales approach selected by Plaintiff, for the court to consider in determining whether or not Measure 49 negatively impacted the subject property's real market value. Plaintiff failed to carry its burden of proof.
Even though Plaintiff failed to carry its burden of proof and the "burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence pleaded by the parties". ORS 305.427; ORS 305.412. Defendants submitted an appraisal report prepared by Richards, but Richards did not testify. For Defendants, Richards presented an appraisal study, relying on a comparative sales approach that compared the "percentage difference between the mean value of buildable and non-buildable land" and included "an additional negative adjustment reflecting [the] level of risk" attributable to their "clouded" title. (Defs' Ex A at 45.) Bradley's and Richards' comparable sales approaches support the conclusion that the subject property's highest and best use improved is residential. There is limited discussion by Richards and none by Bradley of the subject property's highest and best use as vacant, which is the current status of the subject property. (Id. at 29.) Richards' "inferred market analysis" did not include a "fundamental analysis to determine a highest and best use for the subject." (Id.) Prior to the Ra'Nor Estates developer requesting a use change to rural residential one-acre minimum parcel, the subject property was classified for agricultural use. Richards states that the highest and best use of the subject property is "agricultural land" as vacant and improved unless the "Measure 37 `waiver'" is upheld. (Id.) The Measure 37 waiver issue allowing development of the property and the common law vesting process are currently before Oregon trial and appellate courts. As *Page 13 
of the assessment date, there was no evidence that the proposed use was viable. More important, there is no evidence that an agricultural use does not represent the subject property's highest present value, given the controversy surrounding the common law vesting process. There is no consideration of the cost to demolish or remodel the existing improvements, including the infrastructure. No one presented an economic study, weighing various economic factors and relating those factors to the subject property. In sum, there is no evidence before the court to determine whether the highest and best use vacant or improved as agricultural land results in the subject property's highest present value as of the date of assessment. Without a complete highest and best use study, the court does not know if the real market value of the subject property's highest and best agricultural use as vacant or improved is more or less than the subject property's highest and best disputed "Measure 37 `waiver' use as improved. The court lacks sufficient evidence to make its own determination of real market value.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry its burden of proof. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR. *Page 14 
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on March 14, 2011. The Court filed and entered this documenton March 14, 2011.
[1] Plaintiff appealed the Yamhill County Board of Property Tax Appeals Order for a second parcel, referred to as Lot 20, owned by Defendants. The two appeals, TC-MD No 090782B and TC-MD No 090783B, were heard together.
[2] References to the Oregon Revised Statutes (ORS) are to year 2007. *Page 1