## No. 20,494.

OLGA M. APPLE *v.* THE CITY AND COUNTY OF DENVER,
ET AL.
(390 P. [2d] 91)

Decided February 17, 1964.     Rehearing denied March 23, 1964.

Messrs. LEE, BRYANS, KELLY & STANSFIELD, Mr. FLETCHER THOMAS, for plaintiff in error.

Mr. MAX P. ZALL, City Attorney, Mr. BRIAN H. GORAL, Assistant City Attorney, for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

PLAINTIFF in error Apple, hereinafter referred to as plaintiff or by name, owns and resides in a building at 841 Galapago Street in Denver, Colorado. She bought the property in 1952. At that time it contained five apartments and she has, since her purchase, made no changes in it except for routine maintenance. At all times material to the issues here, a couple with two small children occupied a two-bedroom apartment in the basement and the plaintiff lived alone in four rooms on the main floor. Three tenants occupied three separate apartments on the second floor.

In 1955 the City and County of Denver enacted Ordinance 170, Series of 1955 (Article 631, Revised Municipal Code of the City and County of Denver), commonly

known as the Housing Code, which is enforced by the Board of Health and Hospitals of the city. In 1958 the plaintiff's property was inspected. Thereafter, a "notice of violations" was served upon the plaintiff advising her that certain conditions existing on the premises at 841 Galapago Street constituted violations of the Housing Code. The violations complained of can be briefly summarized as follows: apartments which were being used for cooking, eating and sleeping on the second floor and in the basement were not equipped with kitchen sinks; occupants of the upstairs apartments shared a single lavatory which was equipped with a bathtub with an inlet pipe located lower than the bathtub overflow drain, a condition commonly known as a submerged inlet; space heaters and cook stoves were connected with two non-rigid lines which were susceptible to leaks; there were insufficient electrical convenience outlets, resulting in octupus type electrical connections plugged into a single outlet; the stairway intended for use by the tenants and guests of the tenants was not provided with a handrail; torn wallpaper, inadequate screening, broken and cracked windows and loose brick and mortar joints existed; one apartment was so small in size that it did not provide adequate living space; the ceiling in the basement apartment was less than seven feet from the floor as required by the ordinance.

Plaintiff appealed to the Board of Health and Hospitals, contending that the Housing Code was unconstitutional and that the changes required by the "notice of violations" were unreasonable and arbitrary. A hearing was held upon this appeal and testimony was introduced showing the dangers to the public health and safety from each of the violations listed in the "notice of violations." For example, there was evidence presented which showed that the use of a submerged inlet could result in bath water backing up into the drinking supply and causing such diseases as infectious hepatitis and that the loose brick and mortar could result in damp walls

which is a factor in causing respiratory and lung diseases. Testimony as to other violations was in a similar vein.

As a result of the hearing, the Board of Health and Hospitals granted the plaintiff a variance (1) permitting the tenants on the third floor to share the bath; (2) permitting the height of the ceiling in the basement to remain the same; and (3) permitting the occupancy of the apartment with less than 128 square feet to remain the same. The plaintiff was given two months to comply with the remaining provisions of the "notice of violations." The variance granted constituted a substantial reduction in the plaintiff's cost of compliance with the orders of the Board.

Thereafter, plaintiff filed a notice of rehearing with the Board, objecting to the Board's requiring sinks to be placed in the apartments, repair of the wallpaper, repair of the broken windows, installation of screening, requiring a handrail on the stairway, correcting the submerged inlet in the bathtub (which testimony disclosed would cost $10.00 to correct) and correction of the problem arising from insufficient electrical conveniences. This petition was denied.

Apple then brought an action in the district court contending that the Housing Code was unconstitutional and that the Board of Health and Hospitals erred in ordering the plaintiff to comply with the Housing Code with respect to those matters set forth in her petition for rehearing. The trial court granted a further variance by striking the requirements that the plaintiff replace torn wallpaper and fix the cracked windows. The court upheld the order of the Board of Health and Hospitals in all other matters and held the Housing Code of the City and County of Denver to be constitutional in all respects. To review this judgment, plaintiff brings writ of error here.

In this Court, the plaintiff raises only the issue of the constitutionality of the ordinance. She contends that the

Housing Code is unconsitutional because it denies due process in violation of the Fourteenth Amendment of the United States Constitution; that it is retrospective in nature, and that it violates the doctrine of separation of powers in that the ordinance unconstitutionally delegates legislative power. We find no merit in these contentions under the circumstances of this case.

■ The enactment of adequate measures by municipalities to insure safe and healthful living conditions through housing codes designed to protect the health and welfare of the public is, in our opinion, the exercise of the police power in its purest sense. The conservation of existing neighborhoods is one of the weapons by means of which a successful attack on urban blight may be launched. See Guandolo, *Housing Codes in Urban Renewal*, 25 Geo. Wash. L. Rev. 1, 14 ff.

The objective of housing codes was expressed in graphic detail in *Adler v. Deegan*, 251 N.Y. 467, 167 N.E. 704, 708, where the Court said:

" * * * We need not deal with the financial results to the state following good or bad hygenic conditions. We may well confine ourselves more particularly to the social element, and those things which government has today considered as part of its governmental function, the bodily and mental health of its inhabitants. The health of a community, we have discovered, thanks to science, has more to do with the general prosperity and welfare of a state than its wealth or its learning or its culture. A happy, contented citizen is the foundation of the future; he is the bulwark of the commonwealth."

In *Adamec v. Post*, 273 N.Y. 250, 7 N.E. (2d) 120, 122, 109 A.L.R. 1110, a landmark case in this field, Judge Lehman enunciates the following principles which we deem particularly appropriate here:

" * * * there has come a general recognition that dwellings which are unsafe or unsanitary or which fail to provide the amenities essential to decent living may work injury not only to those who live there, but to the

general welfare . . . At the point where economic self-interest ceases to be a sufficiently potent force for the promotion of the general welfare, the Legislature may intervene and require that buildings intended for use as tenement houses or multiple dwellings shall conform to minimum standards which may reasonably be regarded as essential for safe, decent, and sanitary dwelling places."

\* \* \*

"\* \* \* The power of the state to place reasonable restrictions upon the use of property for the promotion of the general welfare is no longer subject to challenge and regulations governing the erection or use of buildings as multiple dwellings which are reasonably calculated to safeguard the public health and safety constitute a proper exercise of that power."

\* \* \*

"The imposition of the cost of the required alterations as a condition of the continued use of antiquated buildings for multiple dwellings may cause hardship to the plaintiff and other owners of the 'old law tenements' but, in a proper case, the Legislature has the power to enact provisions reasonably calculated to promote the common good even though the result be hardship to the individual."

The plaintiff contends, however, that even if it be a proper exercise of the police power to enact a housing code, the action of the Board here must fall because it requires the owner to conform his building to health and safety standards which were not in existence at the time the building was erected. Such attacks premised on retroactivity of operation have been rejected by many courts. See, for example, *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 90 L.Ed. 1096, 66 S. Ct. 850, where it is pointed out that in no case does the owner of property acquire immunity against the exercise of the police power because he constructed a building which was in full compliance with the law at

the time of construction; *Tenement House Dept. of City of New York v. Moeschen,* 179 N.Y. 325, 72 N.E. 231 (Aff'd. 203 U.S. 583, 51 L.Ed. 328, 27 S. Ct. 781); *Paquette v. City of Fall River,* 338 Mass. 368, 155 N.E. (2d) 775; *Commonwealth v. Roberts,* 155 Mass. 281, 29 N.E. 522; *City of Louisville v. Thompson,* (Ky. App.) 339 S.W. (2d) 869; *Gilman v. City of Newark,* 73 N.J. Super. 562, 180 A. (2d) 365; *Boden v. City of Milwaukee,* 8 Wis. (2d) 318, 99 N.W. (2d) 156; *City of Seattle v. Hinckley,* 40 Wash. 468, 82 Pac. 747; *Daniels v. City of Portland,* 124 Ore. 677, 265 Pac. 790, 59 A.L.R. 512; *Perepletchikoff v. City of Los Angeles,* 174 Cal. App. (2d) 697, 345 P. (2d) 261; *Anno.* 109 A.L.R. 1117.

To hold that existing buildings are exempt from ordinances which impose standards designed to protect the safety and welfare of the public would in effect permit those whose actions are dangerous to the health and safety of the community to continue their deleterious conduct unchecked. We cannot agree that it is beyond the police power to reach such conduct.

█ It is true, as plaintiff suggests, that some financial burden will be imposed upon her in order to effect compliance with the Housing Code, but this is not a sufficient reason per se for declaring the law invalid. See *Richards v. City of Columbia,* 227 S.C. 538, 88 S.E. (2d) 683; *Gilman v. City of Newark,* supra; *Adamec v. Post,* supra.

█ We recognize that even though the ordinance be a proper exercise of the police power, it must, in its application to the specific property, be such as not to be an unreasonable demand upon the individual for the benefit of the public welfare. However, the evidence before the Board of Health and Hospitals clearly shows that the provisions of the ordinance which were violated have a definite relation to the health and safety of the public and that the alterations and repairs which the Board of Health and Hospitals required the plaintiff to make were not unreasonable in the light of the objective

sought to be obtained. The plaintiff was granted a variance which substantially lessened the financial sacrifice required of her and the remaining conditions which she is now required to correct are not such as to demand a holding by this Court that they have no relation to the health and safety of the public.

The two remaining points raised by the plaintiff, namely, whether the Housing Code contains sufficient standards and whether its provisions constitute an unlawful delegation of the legislative power to the Board of Health and Hospitals are intimately connected and will be so treated. Obviously, if the standards contained in the ordinance are adequate, then the City Council has not delegated its legislative power to the executive branch of the government.

The main thrust of plaintiff's argument that the ordinance lacks proper standards is directed at Section 631.1-4, Revised Municipal Code of the City and County of Denver. That section contains the following definition:

" 'Approved' shall mean constructed, installed, and maintained in accordance with this article or other pertinent ordinances of the City and County of Denver and rules and regulations adopted and promulgated in pursuance thereof."

The plaintiff contends that this requires the alleged violator to second-guess the inspector and peruse the entire content of the collective ordinances of the City and County of Denver to determine what is required of her in operating her apartment house and that, therefore, the ordinance lacks adequate standards. We find no merit in this contention. In *American Communications Ass'n., CIO, v. Douds,* 339 U. S. 382, 94 L.Ed. 925, 70 S. Ct. 674, the rule is laid down that the standard to be applied in determining whether a legislative enactment is unconstitutionally vague is not one of wholly consistent academic definitions of abstract terms, but is the practical criterion of fair notice to those at whom

the legislation is directed. The courts have evinced a liberal attitude in upholding ordinances similar to the one in question here containing broad, general language. See *Petrushansky v. State*, 182 Md. 164, 32 A. (2d) 696; *Givner v. Commissioner of Health*, 207 Md. 184, 113 A. (2d) 899; *People v. Sarnoff*, 302 Mich. 266, 4 N.W. (2d) 544.

[6] Incorporating into a statute the provisions of other statutes by reference is recognized as a proper enactment of legislation to avoid encumbering the statute books by unnecessary repetition. See *Panama Railroad Co. v. Johnson*, 264 U.S. 375, 68 L.Ed. 748, 44 S.Ct. 391; 50 Am. Jur., *Statutes*, Sections 36 and 37, p. 57; 82 C.J.S., *Statutes*, Sec. 68 (e), p. 120, 5 McQuillan, *Municipal Corporations*, 3d Ed., Sec. 16.12, p. 179. Failure to specify every detail, step by step and action by action, does not render a law vague, indefinite or uncertain from a constitutional standpoint. That objection cannot prevail where standards to be followed are supplied by another legislative enactment necessarily incorporated as an integral part of the subject legislation. *Natt v. Suburban Cook County Tuberculosis Sanitarium District*, 407 Ill. 436, 95 N.E. (2d) 611.

■ The obvious reference in the Housing Code is to those ordinances of the City and County of Denver respecting the maintenance and construction of buildings. The provisions of those ordinances are incorporated by reference into the Housing Code. No one section of the ordinances of the City and County of Denver could possibly contain all of the provisions and requirements in connection with the construction and maintenance of buildings. Those ordinances are separate only in that they occupy separate pages of the Revised Municipal Code of the City and County of Denver. Legally the provisions of other ordinances dealing with construction, installation and maintenance of buildings and the Housing Code which incorporates those ordinances by reference are one and inseparable and the fact that they

appear under different titles in the Revised Municipal Code does not render the Housing Code unconstitutional for vagueness and indefiniteness. The ordinance gives *fair notice* to potential violators as to what is required by it. It is not an unlawful delegation of power to the executive branch of the city government since the ordinance. itself expresses adequately the will of Denver's legislative body.

Plaintiff also complains that no rules and regulations have been passed by the Board of Health and Hospitals as it is authorized to do. This is of no avail to the plaintiff for the lack of such rules and regulations affects her in no way. She is charged with violating specific requirements of the Housing Code and whether the Board has passed rules and regulations is of no moment to the issues before us.

The judgment is affirmed.

MR. JUSTICE HALL dissents.