**TRAILER HAVEN MHP, LLC,**
a Colorado corporation,
Plaintiff–Appellant,

v.

**CITY OF AURORA, Colorado,**
Defendant–Appellee.

No. 02CA1969.

Colorado Court of Appeals,
Div. II.

Nov. 6, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2003.

Laff Stein Campbell Tucker Delaney & Gordon, LLP, Darrel L. Campbell, Englewood, Colorado, for Plaintiff–Appellant.

Charles H. Richardson, City Attorney, Robert Werking, Assistant City Attorney, Aurora, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

Plaintiff, Trailer Haven MHP, LLC, appeals from the trial court's judgment dismissing its complaint against defendant, the City of Aurora. We affirm.

Trailer Haven is a mobile home park operating since 1955. Aurora adopted its city code after it annexed the Trailer Haven land.

Before 1996, the Aurora City Code required that all mobile home units be separated by a fifteen-foot buffer zone. In 1994, Aurora's fire department determined that most of the existing mobile home parks did not comply with Aurora's current code regulating mobile home parks, particularly fire safety and exterior regulations. To address these problems, Aurora sought input from owners and managers of the parks to develop a proposal for minimum standards and a phase-in period to enable the parks to achieve compliance.

In 1996, Aurora amended chapter 90 of the city code to establish new spacing requirements for mobile homes: "There shall be a

minimum of not less than ten feet between the sides of any two units, eight feet between the side of any unit and the end of any other unit, and six feet between the ends of any two units." Section 90–34(a)(1). To lessen the impact of the new separation requirements on existing noncompliant mobile home parks, § 90–33.5 of the amendment contained an amortization or phase-in clause:

> Any manufactured housing park in existence as of January 1, 1997, shall have [until] the following specified dates to be in compliance with the following specified sections. . . .
>
> (2) *With regard to section [90]—34(a)(1), relating to separation requirements for manufactured housing units, January 1, 2007;* except that each park shall submit to the director of planning no later than January 1, 1998, a satisfactorily detailed plan for achieving such compliance. The city shall inspect each park at intervals of two or three years to ensure that satisfactory progress is being made in accordance with the plan submitted to the city. The failure of the owner and manager of any park to comply with the plan submitted on behalf of the park shall constitute a violation of this chapter.

(Emphasis added.)

Language was also added to protect long-term residents from being displaced from pre-existing homes on January 1, 2007:

> Notwithstanding any other provision of this chapter, a manufactured housing unit which has been installed before January 1, 1997, and does not constitute a health or safety hazard may continue to be occupied although such unit does not conform with the requirements of this section, provided such unit shall not be enlarged, added to, or increased in floor space in any manner which would violate the provisions of this chapter. If such a unit is removed from the space, the space shall not be occupied with another manufactured housing unit unless such unit conforms to the requirements of this chapter and a permit is issued therefor.

Section 90–34(c). This section did not designate the use of those pre-existing homes as nonconforming, nor did it exempt any park owner from the requirements of the amended code, including the separation distances.

The Aurora City Council agreed that the exterior boundary setbacks for existing parks would be declared a nonconforming use for the life of the park. Section 90–34(a)(2) ("No unit shall be located within ten feet from the exterior boundary of the manufactured housing park, except that all existing setbacks as of January 1, 1997, are hereby granted legal nonconforming status for the life of the park.").

Trailer Haven did not submit a plan pursuant to § 90–33.5 detailing how it would achieve compliance with the new spacing regulations.

In March 1998, Trailer Haven asked Aurora's chief building official to waive the new spacing requirements and allow it to install one-hour fire-rated barriers around noncompliant homes, citing § 4–2.1.1 of the National Fire Protection Association (NFPA) standards, which provides:

> Any portion of a manufactured home, excluding the tongue, shall not be located closer than 10 ft (3m) side to side, 8 ft (2.4m) end to side, or 6 ft (1.8m) end to end horizontally from any other manufactured home or community building *unless the exposed composite walls and roof of either structure are without openings and constructed of materials that will provide a 1–hour fire rating or the structures are separated by a 1–hour fire-rated barrier.*

Aurora explained to Trailer Haven that the city code specifically did not include the fire wall language of the NFPA standards because it wanted to increase the minimum protection standards for its citizens. Aurora then advised Trailer Haven that it needed to request a variance from the Board of Adjustment and Appeals (BOA) pursuant to § 106–92 of the city code. Aurora allowed Trailer Haven until May 1, 1998, to submit a plan for achieving compliance with the new spacing requirements.

Trailer Haven did not request a variance from the BOA and instead filed a complaint, requesting a declaratory judgment regarding its obligations to comply with §§ 90–33.5 and

90–34. The complaint requested a declaration that the amended city code was unconstitutionally vague, violated due process rights, and constituted an unlawful taking of property. Trailer Haven alleged that it was exempt from the amended city code because the nonconforming mobile homes did not constitute a health or safety hazard. Trailer Haven requested additional relief in the form of an injunction directing Aurora not to enforce the amended code. The complaint also contained a claim for inverse condemnation.

The trial court granted Aurora's motion for summary judgment on all claims except Trailer Haven's exemption claim, finding that material issues of fact existed whether the manufactured housing units that do not meet the separation requirements are exempt from compliance if they do not constitute a health or safety hazard.

In 2001, Aurora amended § 90–34(c) to read:

> If prior to January 1, 2007, any individual manufactured housing unit is removed from its current space, the space shall not be occupied with another manufactured housing unit unless such unit conforms to the requirements of this chapter and a permit is issued therefor. Where there are unique, unnecessary and unreasonable hardships in the way of carrying out the strict letter of the requirements of this section, a manufactured housing park owner may apply to the board of adjustment for a variance from the requirements of this section. A separate variance is required for each individual unit or space. For purposes of this section, "unique, unnecessary and unreasonable hardship" specifically does not include solely financial impact on the manufactured park owner in complying with the requirements of this chapter.

The amendment deleted the clause that had previously exempted nonconforming units existing before January 1, 1997.

Following the changes to § 90–34(c), Trailer Haven was granted leave to amended its complaint. Its amended complaint contained the same allegations as the original complaint and added a claim that the 2001 amendment was unconstitutionally retrospective. The trial court then granted Aurora's motion for summary judgment on all claims. This appeal followed.

## I.

Summary judgment is a drastic remedy and will be granted only if the evidence clearly establishes the absence of any genuine issue of material fact and the moving party is entitled to relief as a matter of law. *Horrell v. Dep't of Admin.*, 861 P.2d 1194 (Colo.1993). There are no genuine issues as to any material facts with respect to the issues before us. We therefore address de novo the questions of law reached by the trial court. *See Horrell v. Dep't of Admin.*, supra.

## II.

■ First, we reject Trailer Haven's contention that the trial court erred in dismissing its exemption claim for its failure to exhaust administrative remedies by not having requested a variance with the BOA. Trailer Haven argues that its claim falls within two exceptions to the rule, which provide that a plaintiff need not exhaust administrative remedies (1) when administrative relief is futile, and (2) when the matters in controversy consist of questions of law rather than issues committed to administrative discretion and expertise. Those exceptions do not apply here.

■ A plaintiff's failure to exhaust administrative remedies may deprive a court of jurisdiction to grant the requested relief. *City & County of Denver v. United Air Lines, Inc.*, 8 P.3d 1206 (Colo.2000). It is well established that "[w]here administrative remedies are provided by statute, the statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority." *Denver–Laramie–Walden Truck Line, Inc. v. Denver–Fort Collins Freight Serv., Inc.*, 156 Colo. 366, 370, 399 P.2d 242, 243 (1965). This rule requiring exhaustion of remedies prevents piecemeal application for judicial relief and unwarranted interference by the judiciary in the administrative process. *Horrell v. Dep't of Admin.*, supra.

The policies of avoiding fragmented adjudication of issues and conserving judicial resources that support the requirement of exhaustion of administrative remedies are not furthered, however, when available administrative remedies are ill-suited for providing the relief sought and when the matters in controversy consist of questions of law rather than issues committed to administrative discretion and expertise. *Horrell v. Dep't of Admin., supra.* Thus, a party need not exhaust available administrative remedies "when the administrative agency does not have the 'authority to pass on the question raised by the party seeking judicial action.' " *Fred Schmid Appliance & Television Co. v. City & County of Denver,* 811 P.2d 31, 33 (Colo.1991)(quoting *Gramiger v. Crowley,* 660 P.2d 1279, 1281 (Colo.1983)).

Section 90–34(c) describes the procedure Trailer Haven must follow to obtain a variance from the new spacing requirements. If a variance is not granted, Trailer Haven may then seek judicial review of that determination. Because Trailer Haven has not yet sought a variance with the BOA, the trial court properly dismissed the exemption claim for lack of jurisdiction. *See Suitum v. Tahoe Reg'l Planning Agency,* 520 U.S. 725, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

We also reject Trailer Haven's argument that its pursuit of a variance through the BOA would have been futile because economic hardship alone is not enough. Although the amended ordinance requires more than economic loss to establish unnecessary hardship as a prerequisite to granting a variance, it does not preclude the BOA from considering economic loss, along with other evidence of hardship, when determining whether to grant the variance. Thus, we conclude that the pursuit of a variance was not a futile act.

### III.

Trailer Haven also contends that it was not required to exhaust its administrative remedies because the amended city code is unconstitutional. It contends that the amended code constitutes a taking without just compensation, is retrospective in nature, and is vague in violation of due process rights. We address and reject each contention in turn.

Aurora is a home rule city and possesses every power possessed by the legislature as to all matters of local concern. Zoning is a matter of local concern. *City of Greeley v. Ells,* 186 Colo. 352, 527 P.2d 538 (1974).

A presumption of validity attaches to zoning decisions of municipal zoning authorities. Thus, a party challenging a zoning ordinance on constitutional grounds assumes the burden of proving the asserted invalidity beyond a reasonable doubt. *Sellon v. City of Manitou Springs,* 745 P.2d 229 (Colo.1987).

### A.

Trailer Haven asserts that the imposition of the amended city code constitutes a taking of property without just compensation in violation of Colo. Const. art. II, § 15. We disagree.

A land use regulation constitutes a taking when applied to a particular property if it does not substantially advance legitimate state interests or if it prevents economically viable use of the property. A governmental regulation that prohibits all reasonable use of property constitutes a taking within the meaning of Colo. Const. art. II, § 15. However, a landowner is not constitutionally entitled to use its property in a manner that results in the maximum attainable profit. *Van Sickle v. Boyes,* 797 P.2d 1267 (Colo. 1990).

Here, the trial court concluded that not all mobile homes are affected by the amended code and that Trailer Haven could continue operating as a mobile home park. The court thus determined that some reasonable use of the property existed, obviating Trailer Haven's assertion that there was an actual physical taking of its property.

In questions of taking, we are concerned with whether the owner is foreclosed from all reasonable use of the property. *Van Sickle v. Boyes, supra.* Here, the amended code does not deprive the owner of Trailer Haven from operating the mobile home park.

Instead, the code requires conformance to the new spacing requirements in the future. Thus, the actions of Aurora requiring Trailer Haven to bring its mobile home park into compliance with the amended city code do not constitute a taking because enforcement of the code will not deprive Trailer Haven of all use of the property.

It is true, as Trailer Haven suggests, that some financial burden will be imposed upon it to effect compliance with the amended ordinances; but this burden, by itself, is not a sufficient reason for declaring the law invalid. *See Apple v. City & County of Denver*, 154 Colo. 166, 390 P.2d 91 (1964). Only 10 to 20 of the 216 mobile homes in Trailer Haven do not meet the new spacing requirements, and Trailer Haven may seek variances for those nonconforming mobile homes. If variances were granted, the financial sacrifice required of Trailer Haven would be substantially reduced.

We also note that the amended code substantially furthers legitimate governmental interests concerning the protection of citizens from fire hazards. *See Van Sickle v. Boyes, supra; see also Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)(taking did not occur where regulation was substantially related to promotion of general welfare and permitted reasonable beneficial use of the property).

We therefore conclude that application of the amended code to Trailer Haven is a reasonable exercise of the police power and does not constitute a taking under Colo. Const. art. II, § 15.

## B.

Trailer Haven also contends that, because the noncomplying mobile homes constitute a nonconforming use, it is excused from the new spacing requirements and that retroactive application of the amended code is unconstitutionally retrospective. Trailer Haven further contends that, if the amended code is applicable, it is unconstitutionally retrospective because it requires Trailer Haven to conform to spacing requirements that were not in existence when it was established.

Trailer Haven argues that the nonconforming use of the property created a vested right that is constitutionally protected from after-the-fact impairment by ordinances imposing more stringent safety requirements than those in existence when the mobile home park was established. We are not persuaded.

### 1.

 A nonconforming use is one which lawfully existed before the enactment of zoning ordinances and is maintained after the effective date of the ordinances, although it presently does not comply with the zoning restrictions applicable to the district in which it is situated. *Anderson v. Bd. of Adjustment for Zoning Appeals*, 931 P.2d 517 (Colo. App.1996).

 Nonconforming uses are entitled to protection under the law. However, the right to extend, enlarge, or even continue a nonconforming use may legally be restricted. *Bird v. City of Colorado Springs*, 176 Colo. 32, 489 P.2d 324 (1971); *Anderson v. Bd. of Adjustment for Zoning Appeals, supra*. Nonconforming uses should be reduced to conformity as speedily as possible because they are necessarily inconsistent with the purposes of zoning and are not intended to be perpetual. *Art Neon Co. v. City & County of Denver*, 488 F.2d 118 (10th Cir.1973); *Wasinger v. Miller*, 154 Colo. 61, 388 P.2d 250 (1964); *Anderson v. Bd. of Adjustment for Zoning Appeals, supra*.

 An owner of property is not immune from the exercise of the police power because he or she constructed a building that was in full compliance with the law when it was built. *Apple v. City & County of Denver, supra*. "To hold that existing buildings are exempt from ordinances which impose standards designed to protect the safety and welfare of the public would in effect permit those whose actions are dangerous to the health and safety of the community to continue their deleterious conduct unchecked." *Apple v. City & County of Denver, supra*, 154 Colo. at 172, 390 P.2d at 94; *see also Bird v. City of Colorado Springs, supra* (a city is allowed to impose zoning restrictions on annexed lands, after annexation, so that

those lands may be accommodated into the orderly growth patterns of the city); *City of Colorado Springs v. Miller,* 95 Colo. 337, 340, 36 P.2d 161, 162 (1934)(one who owns or acquires property "must be ever mindful of the right of the state or city to exercise its legislative authority for the common good").

 Zoning ordinances should be interpreted strictly against allowing indefinite and perpetual continuation of a nonconforming use. *Anderson v. Bd. of Adjustment for Zoning Appeals, supra; Wyatt v. Bd. of Adjustment–Zoning,* 622 P.2d 85 (Colo.App. 1980). Provisions permitting nonconforming uses to continue should be construed strictly, and zoning provisions restricting nonconforming uses should be construed liberally. *Anderson v. Bd. of Adjustment for Zoning Appeals, supra.*

Here, the amended city code seeks to discontinue the nonconforming spacing to protect citizens from fire dangers. To hold that the amended city code does not apply to Trailer Haven because it is a nonconforming use would permit conditions that are dangerous to the health and safety of the community to continue unabated.

### 2.

 Colo. Const. art. II, § 11 provides, "No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation ... shall be passed by the general assembly." A law is retrospective in operation when it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.' " *P–W Invs., Inc. v. City of Westminster,* 655 P.2d 1365, 1371 (Colo.1982)(quoting *Denver, S. Park & Pac. Ry. Co. v. Woodward,* 4 Colo. 162, 167 (1878)).

 The purpose of the constitutional ban on retrospective legislation, like the ban on ex post facto laws, is to prevent the unfairness that results from changing the legal consequences of an act after the act has occurred. *Peoples Natural Gas Div. v. Pub.*

*Utils. Comm'n,* 197 Colo. 152, 590 P.2d 960 (1979).

 The constitutional ban on retrospective operation does not prevent a city from enacting and enforcing ordinances to protect the health and safety of the community. *Van Sickle v. Boyes, supra.* For example, the application of a safety code to buildings that were constructed in a different period under different code requirements is not unconstitutional retrospective legislation. *Van Sickle v. Boyes, supra; see also City of Los Angeles v. Gage,* 127 Cal.App.2d 442, 274 P.2d 34 (1954)(ordinance requiring the discontinuance of nonconforming commercial uses within a five-year period is not an unconstitutional impairment of property rights); *City of Lincoln v. Bruce,* 221 Neb. 61, 375 N.W.2d 118 (1985)(ordinance that limits and plans for the elimination of nonconforming uses is a proper exercise of the municipality's power and does not retroactively deprive property owner of a vested right); *Town of Plattekill v. Dutchess Sanitation, Inc.,* 56 A.D.2d 150, 391 N.Y.S.2d 750 (1977)(town ordinance which prohibited dumping, within the town, garbage that originated outside the town was a health and safety measure and not a retroactive zoning ordinance, and garbage collector's use of site was not immune from operation of ordinance as a prior nonconforming use even if it pre-existed the ordinance), *aff'd,* 43 N.Y.2d 662, 400 N.Y.S.2d 816, 371 N.E.2d 534 (1977).

Here, the consequences to Trailer Haven for noncompliance with the spacing requirements have not changed, and the amended code does not require compliance with the new spacing requirements until 2007. Until that time, Trailer Haven's current spacing is permitted to continue as a nonconforming use, provided that Trailer Haven satisfies the phase-in requirements of the code.

Finally, Trailer Haven argues that the amendment conflicts with § 90–2 of the city code, which allows a nonconforming use in respect to the number of spaces permitted within a M–H or PMH zone so long as the use began before January 1, 1997. We perceive no conflict. Section 90–2, strictly construed, does not relate to spacing requirements. We conclude that the amendment

and § 90–2 relate to two separate regulatory concerns and can be harmonized, thus avoiding any conflict.

We therefore conclude that application of the amended code is not unconstitutionally retrospective here.

## C.

■ Trailer Haven next contends that the amended ordinance, § 90–33.5, is so vague as to violate due process of law. Trailer Haven argues that the amended ordinance does not contain objective standards by which "satisfactory progress" is to be measured, nor does it identify standards to assist in determining how quickly a mobile home park owner must satisfy the minimum spacing requirements before January 1, 2007. We disagree.

■ Where statutes or ordinances are challenged on the ground of vagueness, a court must attempt to construe the law in a manner that will satisfy constitutional due process requirements, if a reasonable and practical construction of the law will achieve such a result. *Robertson v. City & County of Denver,* 978 P.2d 156 (Colo.App.1999).

■ The basic inquiry in a void-for-vagueness challenge is whether the law forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence necessarily must guess its meaning and differ as to its application. The statutory language must be specific enough to give fair warning of the prohibited conduct, yet must be sufficiently general to address the problem under varied circumstances and during changing times. *Robertson v. City & County of Denver, supra.*

■ Failure to specify every detail, step by step or action by action, does not render a law vague, indefinite, or uncertain from a constitutional perspective. *Apple v. City & County of Denver, supra.*

Section 90–33.5 requires nonconforming mobile home parks to submit a plan to the director of planning by January 1, 1998, showing how compliance with the new spacing requirements will be achieved. The ordinance allows each mobile home park owner to submit a plan that accounts for the unique aspects of the particular park. Once the plan is submitted to the director of planning, Aurora officials will inspect each park every two or three years to ensure progress is being made in accordance with the plan submitted. This section clearly states that failure to comply with the plan submitted constitutes a violation of chapter 90.

Contrary to Trailer Haven's contentions, § 90–33.5 does not vest zoning officials with the discretion to determine whether the plans submitted by the mobile home park owners are sufficient and satisfactorily detailed to achieve compliance with the new amended ordinance. Nor are zoning officials required to inspect the mobile home park to ensure that "satisfactory progress" is being made to comply with the new spacing requirements. Rather, Aurora officials will inspect each park to ensure that satisfactory progress is "being made in accordance with the plan submitted to the city."

The spacing measurement is specific, and Trailer Haven has knowledge of its existing spacing dimensions.

We therefore conclude that the new requirements do not require the owners of mobile home parks, like Trailer Haven, to guess at a method of compliance. *See Robertson v. City & County of Denver, supra.* Thus, Trailer Haven has failed to prove beyond a reasonable doubt that § 90–33.5 is so vague as to violate due process rights.

The judgment is affirmed.

Judge MARQUEZ and Judge ROTHENBERG concur.