24CA1540 Parental Resp Conc MMK 06-05-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1540
City and County of Denver District Court No. 23DR31456
Honorable Jennifer B. Torrington, Judge

In re the Parental Responsibilities Concerning M.M.K. and L.M.K., Children,

and Concerning Sarah Nyarok Achyo,

Appellee,

and

Madit William Dau Kot, a/k/a William Dau Madit,

Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BERNARD*
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

Isabel P. Posso, Lakewood, Colorado, for Appellee

Price Family Law, LLC, Bria Burgamy, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    A father, Madit William Dau Kot, appeals the district court's order allocating parental responsibilities for his two children to the children's grandmother, Sarah Nyarok Achyo.  We vacate the judgment, and we remand the case for further proceedings.

## I.    Background

¶ 2    In November 2023, grandmother filed a petition for allocation of parental responsibilities.  Grandmother alleged that the children's mother died in April 2023 but that the children and their mother had lived with her for the five years before the mother's death.

¶ 3    Grandmother also alleged that father "forcibly" took the children to Nebraska about two months after mother died.  She asked the court to grant her sole decision-making responsibility and to limit father's parenting time to supervised visits based on his "history of substance abuse and addiction."

¶ 4    The parties appeared at the initial status conference and a second status conference, both of which were held by a family court facilitator.  At the second status conference, the facilitator scheduled another "status conference with [the] courtroom" to

1

"discuss how [the] case shall move forward."  The facilitator later issued a "Notice of Remote Hearing" advising the parties that "a remote Status Conference ha[d] been set" for February 26, 2024, at 9:00 a.m.

¶ 5     On that day, grandmother and her attorney appeared, but father did not.  The court found that, although father had received proper notice of the scheduled proceeding, he had voluntarily not shown up.

¶ 6     The court then said that the "purpose of today's hearing is to determine standing."  Grandmother began her testimony, but she did not finish it because her interpreter had to leave.  The court continued the hearing for two weeks and ordered grandmother's counsel to send notice of the new hearing date to father.  Later that day, grandmother's counsel filed a "Notice of Status Hearing via Webex," which notified father that a "status hearing via Webex" had been scheduled for March 12, 2024, at 9:00 am.  The notice stated that it had been mailed to father.

¶ 7     Father did not appear on March 12.  The court again found that he had received notice but that he had voluntarily not shown up.

¶ 8     After hearing the remainder of grandmother's testimony, the court found that grandmother had standing to seek an allocation of parental responsibilities; that Colorado was the children's home state; and that grandmother had, by clear and convincing evidence, rebutted father's *Troxel* presumption and proven that her proposed parenting plan was in the children's best interests.  *See Troxel v. Granville*, 530 U.S. 57, 68 (2000)("[T]here is a presumption that fit parents act in the best interests of their children.").

¶ 9     Two weeks later, the court issued written permanent orders. The orders allocated sole parenting time and decision-making responsibility to grandmother, while limiting father to supervised therapeutic parenting time.

¶ 10    Father filed a motion for post-trial relief under C.R.C.P. 59. He argued that he had not received proper notice of the hearings and that the court had not appropriately considered his constitutional rights or the children's best interests when allocating

3

parental responsibilities to grandmother. The court did not rule on father's post-trial motion, so it was deemed denied under C.R.C.P. 59(j).

## II. Procedural Due Process

¶ 11 Father contends that the court violated his due process rights by deciding that grandmother had standing and by entering the permanent orders allocating parental responsibilities to her without giving him proper notice of the hearings and a meaningful opportunity to be heard. We agree.

### A. Applicable Law and Standard of Review

¶ 12 Due process requires a party to be provided with notice and a meaningful opportunity to be heard. *See In re C.L.S.*, 252 P.3d 556, 559 (Colo. App. 2011); *In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007). The essence of procedural due process, however, is fundamental fairness. *Van Sickle v. Boyes*, 797 P.2d 1267, 1273 (Colo. 1990). It is therefore "flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Accordingly, notice is sufficient if it is reasonably calculated, under the circumstances,

to apprise a party of the pendency of the action and afford the party an opportunity to present objections. *C.L.S.*, 252 P.3d at 559.

¶ 13 We review a procedural due process claim de novo. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 26.

¶ 14 In his reply brief, father submits that grandmother violated C.A.R. 28(b) because she did not state in her answer brief whether she agreed with father's proposed standard of review for the due process claim. Father then requests that we strike the portion of the answer brief dealing with the due process claim.

¶ 15 We will not do so. While the answer brief does not explicitly use the words "agree" or "disagree," grandmother implied that she disagreed with father's proposed standard of review by proposing that we employ a different one: abuse-of-discretion review. That is clear enough for us to understand her position on the standard of review. We nonetheless reject grandmother's proposed abuse-of-discretion review because, as we have stated above, the proper standard of review for father's due process contention is de novo.

## B. Analysis

¶ 16    As an initial matter, we reject grandmother's assertion that father did not preserve his due process contention. True, father argued that he did not have adequate notice of the hearings for the first time in his post-trial motion. *See Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66 (noting that, in general, arguments made for the first time in a post-trial motion are deemed waived for purposes of appeal).

¶ 17    But the crux of father's due process contention is that, because of the insufficient notice, he could not have known that the court was planning to hold a hearing on standing or on permanent orders until after the court had already done so. As a result, father could not have raised his due process contention before the court had held the hearings and entered its orders. *See In re Marriage of Herold*, 2021 COA 16, ¶ 7 (noting that we may review an issue raised for the first time on appeal if the appellant did not have the opportunity to object or to raise the issue to the trial court). And the court had the opportunity to rule on the due process contention because father raised it in his post-trial motion. *See Grant Bros.*

*Ranch, LLC v. Antero Res. Piceance Corp.*, 2016 COA 178, ¶ 11 ("All that is needed to preserve an issue for appeal is for the issue to be brought to the district court's attention so that the court has an opportunity to rule on it.").

¶ 18　　Next, as we understand father's argument, he does not dispute that he knew about the dates and the times of the court settings. Rather, he asserts that the notice he received did not adequately inform him of what was scheduled to happen on those dates and times. For example, he points out the notice did not inform him that the court would hear testimony, that it would decide whether grandmother had standing, that it would enter permanent orders, or that it would resolve the entire case.

¶ 19　　Recall that, according to the minute order, the facilitator scheduled a "status conference" with the court to "discuss how [the] case shall move forward." Although the facilitator issued a "Notice of Remote Hearing," the notice stated that a "status conference" had been scheduled. When grandmother's counsel issued the second notice, the notice stated that a "status hearing" had been scheduled.

¶ 20    Importantly, neither of the notices informed father that the hearing would cover the issues of standing, permanent orders, or whether the court would allocate parental responsibilities to grandmother.  Neither of the notices contained anything to inform father that the court would be hearing testimony or entering any final orders on the issues of parenting time and decision-making.

¶ 21    The court's decision to resolve the entire case and to enter permanent orders at the "status hearing" contradicted its case management order.  Specifically, the management order stated that grandmother, as the petitioner, was required to schedule mediation within seven days of the initial status conference and that mediation "must be completed prior to the permanent orders hearing."  But nothing in the record shows that grandmother tried to schedule mediation.

¶ 22    The management order also stated that

- grandmother and father were required to participate in a co-parenting class; but nothing in the record indicates that either of them did so;

8

- any party with counsel was required to file, at least seven days before a contested hearing, a joint trial management certificate to identify the disputed issues in the case, any witnesses, and any exhibits to be presented at trial; but grandmother, who was represented by counsel, did not file such a certificate before the February 26 or March 12 hearings; and

- any party without counsel was required to submit a pre-trial statement at least seven days before a permanent orders hearing; but father did not have the opportunity to do so because he had not been informed that permanent orders would be discussed at either the February 26 or March 12 hearings.

¶ 23     "A parental responsibilities dispute between a parent and a nonparent is not a contest between equals[.]" *In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 13. Unlike grandmother, father has a fundamental right to make decisions concerning the care, custody, and control of his children, and he is

entitled to a presumption that he acts in his children's best interests. *Id.* at ¶¶ 13-15; *see also Troxel,* 530 U.S. at 65.

¶ 24    We conclude that, although the record establishes that father knew about the scheduled proceedings, the notice was insufficient to apprise him of the nature of those proceedings or what the court intended to decide at them. As a result, he did not have a meaningful opportunity to be heard at them.

¶ 25    We further conclude that, without proper notice and a meaningful opportunity to be heard, father was not (1) able to protect his fundamental right to make decisions concerning the care, custody, and control of his children, and (2) given the benefit of the presumption that he acts in his children's best interests. We therefore vacate the judgment. We remand the case to the court to schedule new proceedings on grandmother's petition for an allocation of parental responsibilities and to provide father with proper notice of, and with a meaningful opportunity to be heard at, those proceedings. *See C.L.S.,* 252 P.3d at 559 (stating that a judgment entered in violation of due process is void).

¶ 26     Because we vacate the judgment and remand the case, we do not address father's contention that the court abused its discretion by allocating sole parenting time and decision-making responsibility to grandmother.  We take no position on the merits of grandmother's petition.

## III.    Appellate Attorney Fees

¶ 27     Grandmother requests appellate attorney fees under section 13-17-102, C.R.S. 2024, because father's appeal was frivolous, groundless, and vexatious.  We deny that request because we have ruled in father's favor on appeal.

¶ 28     Grandmother also asks us to award her appellate attorney fees under section 14-10-119, C.R.S. 2024, because of "the disparity in income" between father and grandmother.  Because the court is better equipped to determine the factual issues regarding the parties' current financial resources, we direct it to address this request on remand.  *See* C.A.R. 39.1; *In re Marriage of Schlundt*, 2021 COA 58, ¶ 54.

## IV.    Disposition

¶ 29     The judgment is vacated, and the case is remanded for further proceedings to resolve grandmother's petition for allocation of

parental responsibilities.  The court shall ensure that father is provided with proper notice of all proceedings and a meaningful opportunity to be heard at them.  The court shall also determine grandmother's request for appellate attorney fees under section 14-10-119 based on the parties' relative financial resources at the time of the remand proceedings.

JUDGE KUHN and JUDGE MOULTRIE concur.