**ANIMAS VALLEY SAND AND GRAVEL, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF LA PLATA, Colorado, Defendant–Appellee.**

No. 98CA1474.

Colorado Court of Appeals, Div. II.

Feb. 3, 2000.

Certiorari Granted Aug. 21, 2000.

Abadie & Zimsky, LLC, William E. Zimsky, Durango, Colorado, for Plaintiff–Appellant.

Goldman, Robbins & Rogers, LLP, Michael A. Goldman, Jeffery P. Robbins, Durango, Colorado, for Defendant–Appellee.

Opinion by Judge MARQUEZ.

In this action for inverse condemnation, plaintiff, Animas Valley Sand and Gravel, Inc. (AVSG), appeals the trial court's judgment in favor of defendant, the Board of County Commissioners of the County of La Plata (County). We reverse and remand for further proceedings.

According to the stipulated facts, AVSG purchased approximately 46.5735 acres of real property in 1961 in La Plata County. It later subdivided the property into two tracts: Tract A, comprising 4.6493 acres, more or less, and Tract B, containing 41.924 acres, more or less. Since 1960, under a permit issued by the Mined Land Reclamation Division to mine sand and gravel in a ten-acre area, AVSG has operated a sand and gravel pit on portions of both tracts. Approximately eight of the ten acres are located on Tract B.

In 1993, the County adopted the Animas Valley Land Use Plan (Plan), which designated the approximately eight acres of Tract B that were used for the sand and gravel pit as industrial district and which allowed AVSG to mine sand and gravel on this portion of the tract. The remaining portion of Tract B, approximately 33 acres, is not covered by the mining permit and was designated as a river corridor district. Although mining sand and gravel within the river corridor district is prohibited, the Plan provides for certain uses permitted by right or by special use permit.

Following the adoption of the Plan, AVSG requested that the County designate the entire Tract B as part of the industrial district, but the County denied AVSG's request. AVSG sought relief from the County's decision pursuant to C.R.C.P. 106(a)(4), but the trial court denied its request and also denied AVSG's motion to reconsider.

AVSG then filed a petition for inverse condemnation. AVSG alleged that designation of approximately 33 acres of its real property as part of the river corridor district deprived it of all reasonable uses of the property and that such designation substantially reduced the value of the 33 acres so as to constitute a taking within the meaning of Colo. Const. art. II, § 15. The trial court bifurcated the

proceedings to determine separately the issues of taking and damages.

The trial management order stated that the issue before the court in the first phase of trial was whether a regulatory taking had occurred as a result of the downzoning of an area of land owned by AVSG. It defined the legal issues as:

1. Whether, in making the takings analysis, the Court should look only at the 33 acres of Tract B that have been designated as part of the River Corridor District or whether the Court should consider the effect of the [Plan] on the entirety of Tract B?

2. Whether any of the uses allowed under the [Plan] for the Subject Property, either by right or by special use, constitute "reasonable use" as that term is used in Colorado takings jurisprudence?

3. Whether the inability to mine sand and gravel and heavy minerals from the Subject Property constitutes a taking of the mineral interests of AVSG which is compensable under Art. II, Sec. 15 of the Colorado Constitution?

After a bench trial, the trial court found that AVSG had failed to establish that it could not put its property to reasonable use and denied AVSG's petition.

## I.

Asserting that the burden of proof in an inverse condemnation claim is by a preponderance of the evidence, AVSG contends that the cases cited by the court indicate that it used either a "beyond a reasonable doubt" or "clear and convincing standard." We conclude that the record is unclear in this regard.

Colo. Const. art. II, § 15, provides, in relevant part, that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation."

■ To pursue an inverse condemnation claim under the Colorado Constitution, that is, to compel a public entity to provide compensation to a property owner, the property owner must establish, among other things, that there has been a taking or damaging of

a property interest. *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 992 P.2d 1188 (Colo.App.1999).

■ Here, the parties agree that the burden of proof in this case is by a preponderance of the evidence. Thus, we will accept that position for purposes of our analysis. *See* § 13–25–127(1), C.R.S.1999. However, when it determined that the burden falls upon the aggrieved landowner to prove that no reasonable use for the land exists, the trial court did not state which burden of proof it applied. In three of the four cases cited in the trial court's order, the appellate courts applied a standard of beyond a reasonable doubt or clear and convincing evidence in addressing the validity of particular ordinances. *See Bird v. City of Colorado Springs*, 176 Colo. 32, 489 P.2d 324 (1971)(one claiming invalidity of county zoning must establish such invalidity beyond a reasonable doubt); *Roeder v. Miller*, 159 Colo. 436, 412 P.2d 219 (1966)(in an attack on zoning ordinance on the basis that zoned land is not susceptible to any reasonable or lawful use or that restrictions violate due process, landowner must prove such facts by clear and convincing evidence); *Baum v. City and County of Denver*, 147 Colo. 104, 363 P.2d 688 (1961)(burden on plaintiffs to establish beyond a reasonable doubt that ordinance deprives them of property without due process of law).

Thus, we cannot determine from the order which standard the trial court applied. Accordingly, we must remand for new findings using a preponderance of the evidence standard.

## II.

Because we cannot determine whether the trial court applied the proper burden of proof, we are unable to address AVSG's contention that the designation of the subject property as part of the river corridor district of the Plan constituted a taking of its property because it leaves AVSG with no reasonable or economically viable use of the subject property.

■ A governmental regulation that prohibits all reasonable uses of property con-

stitutes a taking under Colo. Const. art. II, § 15. *US West Communications, Inc. v. City of Longmont*, 948 P.2d 509 (Colo.1997). However, so long as the regulation leaves some reasonable use for the property, it does not violate state constitutional standards. The burden of proving that no reasonable use exists for the land falls on the aggrieved landowner. *Jafay v. Board of County Commissioners*, 848 P.2d 892 (Colo.1993).

■ We do, however, reject the County's assertion that we must consider AVSG's property as a whole rather than only the approximately 33 acres affected by the Plan. We do so because the 33 acres were the subject of AVSG's petition, they were the only portion affected by the Plan, and, as noted by the trial court, "it is this 33–acre portion of Tract B which is the subject matter of this action."

### III.

■ AVSG further contends that, even if the subject property does retain some reasonable or economically viable use, a taking occurs if the complained of regulation "goes too far" and substantially diminishes the value of the property. It asserts that Colorado law recognizes "partial taking" claims when a regulation significantly diminishes the value of property. We disagree.

### A.

In support of its argument, AVSG relies on a statement in *State v. The Mill*, 887 P.2d 993, 999 (Colo.1994), that a "[r]egulation which does not prevent all economic use may also constitute a taking if it goes too far." That reliance is misplaced.

■ The term "partial taking" normally refers to a taking of only a portion of one's property. *See La Plata Electric Ass'n v. Cummins*, 728 P.2d 696 (Colo.1986); *City of Westminster v. Jefferson Center Associates*, 958 P.2d 495 (Colo.App.1997)(determining value of land taken and value of remainder). We understand AVSG's use of that term here to mean significantly diminishing the value of an entire tract.

■ The determination whether a regulation goes "too far" is essentially an ad hoc factual inquiry. When determining whether governmental action has gone beyond regulation and effects a taking, the following must be considered: (1) the character of the governmental action; (2) its economic impact; and (3) its interference with reasonable investment-backed expectations. *State v. The Mill, supra*. Such an inquiry does not support AVSG's position.

Historically, Colorado courts have held that whether there is a taking within the meaning of Colo. Const. art. II, § 15 is determined by whether a government regulation forecloses all reasonable use of property. *Jafay v. Board of County Commissioners, supra* (issue central to a taking inquiry claim is whether the governmental regulation as applied to the aggrieved landowner's property forecloses all reasonable use of that property); *Van Sickle v. Boyes*, 797 P.2d 1267 (Colo.1990)(enforcement of safety code did not constitute a taking because enforcement did not deprive owner of all reasonable use of building); *Sellon v. City of Manitou Springs*, 745 P.2d 229 (Colo.1987)(landowners failed to prove they could not put their property to any reasonable use); *Bird v. City Colorado Springs, supra* (landowner must show that he has been deprived of all reasonable uses of his land).

In a zoning case, a division of this court held that, because zoning restricts an owner's right to use the property, it constitutes a partial taking that is constitutionally permissible so long as it is reasonable. The division held that there is no constitutional violation when the zoning does not deny a landowner all economically viable use of the property. *See Applebaugh v. Board of County Commissioners*, 837 P.2d 304 (Colo.App.1992).

■ Additionally, a landowner is not constitutionally entitled to use the property in a manner that results in the maximum available profit. *See Van Sickle v. Boyes, supra.*

Thus, as noted, under the law prior to *State v. The Mill, supra*, the issue central to a taking inquiry was whether the governmental regulation, as applied to the aggrieved landowner's property, foreclosed all reason-

able use. *Jafay v. Board of County Commissioners, supra.*

In *State v. The Mill, supra,* the supreme court considered two consolidated cases, one involving inverse condemnation and regulatory taking, and another involving eminent domain. In discussing the regulatory taking claim, the supreme court stated:

A land use regulation constitutes a taking under the Colorado and United States constitutions if it prevents all economically viable use of the property. *Lucas,* [505] U.S. at [1015], 112 S.Ct. at 2893; *Van Sickle v. Boyes,* 797 P.2d 1267, 1271 (Colo. 1990). Regulation which does not prevent all economic use may also constitute a taking if it goes "too far." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

*State v. The Mill, supra,* 887 P.2d at 999. We do not read this statement as changing prior law that all *reasonable* use must be foreclosed.

The statement in *State v. The Mill, supra,* must first be considered in the context of the factual circumstances of that case. Of primary concern in the discussion of the regulatory taking issue was whether The Mill was on notice of the significant risk of further regulation of use of its site. The supreme court held that it was unreasonable for The Mill to claim it had no notice of such regulation and that any use limitations could not have constituted a taking because the uses were never lawfully available to The Mill. Thus, the question was whether the state could regulate the use, not whether the value of the property had been significantly diminished.

Nor did the analysis of the eminent domain action in *State v. The Mill, supra,* depart from the prior rule. The issue in that proceeding centered on the interpretation of the federal statute.

Further, the cases upon which the supreme court relied in the *State v. The Mill, supra,* do not compel a different result. At issue in *Pennsylvania Coal Co. v. Mahon, supra,* was a state statute forbidding mining of coal in such a way as to cause the subsidence of, among other things, any structure used as a human habitation, not whether a regulation went too far. In *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the Supreme Court was addressing a regulation that denied the landowner all economically beneficial or productive uses of the land.

Finally, more recent Colorado cases continue the requirement for prohibition of all reasonable use. *See U.S. West Communications, Inc. v. City of Longmont, supra,* (a governmental regulation that prohibits all reasonable use of property constitutes a taking); *Williams v. City of Central,* 907 P.2d 701 (Colo.App.1995) (a governmental regulation that prohibits all reasonable use constitutes a taking).

#### B.

██ As additional support for its contention, and in reliance upon *Central Colorado Water Conservancy District v. Simpson,* 877 P.2d 335 (Colo.1994), AVSG asserts that a taking occurs under Colo. Const. art. II, § 15 when "property has been substantially damaged by governmental action." We conclude that the issue of the applicability of the "damaged" provision of Colo. Const. art. II, § 15 was not presented to the trial court at trial when determining the issue of taking, and thus, the merits of this contention will not be addressed here.

██ The intent of including the word "damaged" in the Colorado Constitution was to grant relief to property owners who had been substantially damaged by the making of public improvements abutting their lands, but whose land had not been physically taken by the government. *City of Northglenn v. Grynberg,* 846 P.2d 175 (Colo.1993).

As noted above, the trial management order set forth the three issues to be tried. Although plaintiff refers to the word "damaged" as provided in Colo. Const. art. II, § 15 in its petition and its response to the County's motion for summary judgment, there is no indication in the record, including AVSG's trial brief, that AVSG objected to the omission of an issue regarding the "or damaged" provision of the Colorado Constitution. Nor did AVSG rely on this provision in its

arguments during trial. Further, in quoting Colo. Const. art. II, § 15, the trial court's order specifically omits the words "or damaged" from the quote, and the order makes no findings or conclusions on this provision.

Accordingly, we do not address the applicability of this provision here. *See Diamond Back Services, Inc. v. Willowbrook Water & Sanitation District*, 961 P.2d 1134 (Colo.App. 1997)(an appellate court may consider only issues that have actually been determined in the first instance by a trial court).

### C.

While AVSG also relies on *Florida Rock Industries, Inc. v. United States*, 18 F.3d 1560 (Fed.Cir.1994), and *Florida Rock Industries, Inc. v. United States*, 45 Fed. Cl. 21 (Fed.Cl.1999), the views regarding partial taking set forth in those cases are not universally accepted. *See Clajon Production Corp. v. Petera*, 70 F.3d 1566 (10th Cir.1995)(expressly rejecting the *Florida Rock* approach and holding that if a regulation prohibits all economically beneficial use, then that regulation categorically effects a taking in the same sense as a physical taking).

Additionally, AVSG points to language in *Central Colorado Water Conservancy District v. Simpson, supra*, stating that a taking occurs when an entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property. *See also Northglenn v. Grynberg, supra*. To the extent that this language may be read to support AVSG's position, the supreme court's most recent use of this language in *US West v. City of Longmont, supra*, is followed by another statement that a governmental regulation that prohibits all reasonable use of property constitutes a taking. We read *US West* as consistent with our holding here.

Accordingly, AVSG's contentions regarding substantially diminishing the value of the property must fail.

### IV.

AVSG further contends that the designation of the subject property as part of the river corridor district constitutes a taking of AVSG's property because the regulation goes "too far" and substantially deprives AVSG of the use and enjoyment of its property. AVSG premises this contention on this court's holding that a partial taking is compensable under the takings clause of the Colorado Constitution.

In view of our holding in Part III, we reject AVSG's contention and its request for a remand to develop the record further.

### V.

In view of our disposition, we also reject AVSG's final contention that the prohibition against mining the subject property constitutes a compensatory taking of AVSG's mineral rights. As set forth above, the trial court is to determine by a preponderance of the evidence whether adoption of the Plan prohibited all reasonable use of the property. *See Van Sickle v. Boyes, supra*.

Accordingly, the judgment is reversed, and the cause is remanded for additional findings consistent with the views set forth here.

Judge RULAND and Judge CRISWELL * concur.